## Horseshoe Coal Company v. Maryland Casualty Company, et al.

(Decided May 1, 1925.)

### Appeal from Laurel Circuit Court.

1. Insurance—Employer's Liability Insurance Policy Held Limited to Operation of Mine Referred to in Policy.—Insurance policy covering liability for injuries to mine employees held limited in its scope to operation of mine referred to in policy.

2. Insurance—Insurer Not Entitled to Premiums on Advacements to Mine Operators from whom Employer Purchased Output.— Where employer's liability policy covered operation of particular mine, and premiums were based on wages paid, insurer held not entitled to premiums based on advancements to operators of small mines, the output of which was purchased by employer.

3. **Insurance—Insurer Held Entitled to Premium Based on Higher Rate Contemplated by Parties on Reinspection of Premises.—** Insurer of liability for injuries to mine workers held entitled to premium based on higher rate contemplated by the parties as fixed on a reinspection of the mine.

H. C. CLAY for appellant.

BARRETT, ALLEN & ATKISSON and GEORGE BROCK for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

In January, 1918, appellant was operating a coal mine at or near East Bernstadt, in Laurel county. It applied to appellee, Maryland Casualty Company, for a policy of liability insurance covering its liability for injuries to employes. The policy was issued for the term of one year on the 5th of January, 1918. The premium paid therefor was for the time being fixed at $3.82 on each one hundred dollars of the wages paid to appellant's employes during the period covered, for work in and about its mine, and it was estimated for the purposes of the policy that such annual payments to its employes would be $10,000.00; and upon that basis appellant paid the premium of $382.00. It was in effect provided in the policy that if the premium thus computed is greater than the advanced premium so paid, the employer should thereafter pay the additional amount, but if less, the insurer should return to the employer the difference.

It was likewise provided therein that the insurer should have the right to inspect the mine, and if upon such inspection, under its rules and regulations, a higher rate of insurance was justified, the insured should pay such higher rate. Accordingly in February, 1918, such inspection was made, and the report of the inspector disclosed a situation which required, according to his report, a rate of $5.44 instead of $3.82 on the one hundred dollars. It likewise recommended that certain improvements and changes be made in the mine, which would entail some considerable expense.

The Diamond mine was an old operation, and upon receiving such report appellant's board of directors had a meeting and decided not to further operate the mine, and to cancel the policy of insurance. The policy was

delivered to its superintendent, with directions to notify the company of its cancellation; but some few days later, and evidently before such notice, the superintendent was suddenly killed in an accident, and it is apparent the notice was not given.

The policy, therefore, remained in effect for the whole period of one year, although the operation at that mine was shortly thereafter discontinued, as above indicated, the evidence showing, without contradiction. that they ceased on the 29th day of April, 1918.

The application for such insurance, which is expressly made a part of the policy thereafter issued, describes and refers to the mine operated by appellant as the "Diamond Mine," and in fact that was the only mine operation then being conducted by appellant. Upon receiving the inspector's report in March, the active operation of the Diamond mine was discontinued, nothing thereafter having been done in that mine except the taking therefrom of the tools and machinery, and the pulling of some stumps, and, as before stated, that was completed on the 29th day of April. Thereafter, however, appellant acquired the right by lease or contract to open up, about a half mile away, another new coal operation, which property it did not control at the time the policy was issued, and after opening up such new operation, an entirely separate and distinct mine operation from that of the Diamond mine, it some time in the summer of 1918 began to mine coal therefrom.

There were also in the locality certain small mines known as wagon mines, and appellant advanced money to some of the operators of these small mines, under a contract by which it took their output at certain prices.

This is an action by appellee against appellant to recover from it the premium upon that insurance policy based not only upon its payment to its employes in the operation of the Diamond mine, but also based upon its payments to its employes in the operation of the new or "Horseshoe" mine, and the evidence convincingly shows that appellant's payment for coal to the operators of the wagon mines is largely embraced within the sum upon which appellee seeks to base its recovery for a premium.

At the time the insurance policy was issued the Horseshoe mine had never been opened, and appellant

did not control the property upon which it was located; at that time there had been no advancements by appellant to the operators of the wagon mines, and no coal bought from them.

At the conclusion of all the evidence each party asked for a directed verdict, the plaintiff for a directed verdict based upon a total expenditure by appellant of twenty-eight or twenty-nine thousand dollars, and the defendant for a directed verdict because the $382.00 already paid overpaid the insurance on the expenditures made in the operation of the Diamond mine, and upon its counterclaim, asked a directed verdict for the difference.

The court directed a verdict for the plaintiff of $731.00 upon the basis that all the expenditures of appellant in both mines, and in the financing of the wagon mine operators, should be estimated in fixing the amount of the premium, but estimated the premium at the rate of $3.82 on the one hundred dollars.

The evidence tended strongly to show that the total expenditures of appellant in the operation of the Diamond mine, which was discontinued on April 29th, was only $4,400.00 and some dollars, although the books of the company were at the time of the trial misplaced and could not be produced. It appeared, however, on the motion for a new trial that they had again been found, but exactly what they may show is not disclosed in this record.

Manifestly the insurance covered only the operation of the Diamond mine; that was at the time the only mining operation conducted by appellant, and it is hardly conceivable that they could have contracted with reference to any other mining operation. At that time the Horseshoe mine had never been opened and its location was not in the control of appellant, and we have no difficulty in finding that its operation was not within the contemplation of the parties when the policy was issued. The mine operation embraced in the policy was distinctly referred to as the Diamond mine, and it would doubtless have been a great shock to appellee if it had been held liable under that policy for an injury to one of appellant's employes received in the Horseshoe mine.

The judgment was likewise erroneous in estimating the premium to which appellee was entitled by embracing therein the advancements by appellant to wagon

miners to enable them to operate. They were not contractors or subcontractors within the meaning of the policy, because they were not operating in or taking coal from the Diamond mine, the only one embraced within the terms of the policy.

It is propably the first instance in which a liability insurance corporation desires to have it established that it is liable for an operation conducted by the insured's employes in a separate and distinct mine from that designated and specifically referred to in the policy.

That being true, there is a dearth of authority on this question, but we find in 15 Cyc. 1037, an accurate statement of the proposition, with a citation of authority. That is:

"Where a policy insures against claims for damages by reason of injuries incurred by employes in certain designated operations it cannot be extended to include claims for injuries happening to employes while engaged in work other than that specified."

The authorities cited under that text appear to uphold it, but none of them is based upon a state of fact similar to this.

Manifestly, however, the parties contracted solely with reference to operations, conducted in and about the Diamond mine, and the premium to which appellee is entitled should be based wholly upon the compensation paid by appellant to its employes in the operation of that mine during the life of the policy. On another trial, when appellant's books will probably be introduced in evidence, the court will direct a verdict for the party entitled to the same under the principles herein announced, but will base the premium to which appellee is entitled upon the higher rate fixed by the inspector, as that rate was contemplated by the parties upon the reinspection, as shown by the terms of the policy.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.