MILLER BROTHERS CONSTRUCTION COMPANY vs. MARYLAND CASUALTY COMPANY ET AL. .

First Judicial District, Hartford, May Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 6th—decided July 14th, 1931.

*Henry H. Hunt,* for the appellant (plaintiff).

*S. Polk Waskowitz* and *Edward S. Pomeranz,* with whom, on the brief, was *George Miske,* for the appellee (defendant The Indemnity Insurance Company of North America).

*DeLancy S. Pelgrift,* for the defendant Maryland Casualty Company, filed a brief but did not argue the cause.

HAINES, J. The plaintiff, a corporation under the laws of the State of Connecticut, with its office and headquarters in Hartford, is engaged in the construction of state highways, and in October, 1928, was so engaged in this State and the State of New York. In August, 1929, the plaintiff was constructing a state highway in Brookfield in this State, and James H. De-Gray of East Hartford was hired by the plaintiff as an oiler and general mechanic and was sent to the Brookfield job where he worked until sometime in October, 1929. By his experience he had become a man of general utility and able to handle most of the machinery used by the plaintiff company. In July, 1929, the plaintiff entered into a contract with the State of Vermont for the construction of a state highway at Ryegate in that State. About October 19th, 1929, the Brookfield contract was nearly completed, and being in need of his services on the Vermont job, the plaintiff sent DeGray to the latter place where he was at work

for the plaintiff on November 4th, 1929, when he sustained an injury arising out of and in the course of his employment from which he died November 16th, 1929. He left a widow, who applied to the compensation commissioner for the first district in this State for compensation as a dependent. Upon due notice to all parties in interest, a hearing was held by the commissioner on January 17th, 1930, at Hartford, and on the following day he awarded the widow $21 per week commencing November 17th, 1929, and continuing for not longer than three hundred and twelve weeks. In compliance with this award, the plaintiff, to September 8th, 1930, had paid the widow $2129.16 and has expended other sums in legal proceedings and otherwise in connection with the claim. During all this period and to the present time the only office of the plaintiff has been in the city of Hartford, and it has not had any office in any other place, and all the records of the plaintiff, including pay rolls on all work under construction, have always been kept in the Hartford office, the pay roll being divided in accordance with the locations of its various projects, for its own convenience and for purposes of audit.

The trial court's finding incorporated the finding and award of the compensation commissioner from which it appears that the superintendent on the job in Vermont being unable to secure what he wanted in that State, asked the Hartford office to send a machine known as a grader, with a man to operate it. The grader was sent and DeGray, a Connecticut man who was working in Connecticut under a contract made in Connecticut and under the provisions of the Connecticut compensation law, was the man sent to operate the machine. He was injured fourteen days after reaching there and while operating this machine. When sent to Vermont, DeGray's name was not re-

moved from the plaintiff's pay roll and when injured, he was considered as still in the plaintiff's employ. He was transferred to Vermont, quite obviously as a temporary expedient, and continued his work there under his Connecticut contract "which contemplated services in this State and in whatever other State he might be sent in pursuance of the business of the respondent-employer." It was upon this state of facts that the commissioner based his right to make the award, a jurisdiction which is conceded by the Indemnity Company upon this appeal.

The plaintiff had taken out two policies of compensation insurance, one in Connecticut with the Indemnity Company of North America, on October 19th, 1928, for one year, and this had been renewed and was in force at the time DeGray was injured. The entire policy in all its terms is made a part of the finding by the trial court, as Exhibit A. Being informed that compliance with the law of the State of Vermont required the plaintiff to take out a policy of compensation insurance on its Vermont employees through a resident agent in that State, a policy was obtained from the Maryland Casualty Company of Baltimore, the provisions of which were substantially the same *mutatis mutandis*, as in the Indemnity Company policy, the declarations stating that the locations were in the State of Vermont. This policy was also in force at the time DeGray was injured. It is, with all its provisions, made a part of the finding by the trial court, as Exhibit 1. At the hearing before the commissioner for the first district at Hartford on January 17th, 1930, the plaintiff sought an order from the commissioner making both insurers jointly liable with the employer, if an award was made. The Indemnity Company then filed a plea to the jurisdiction claiming that as the accident happened in Vermont, it was not

liable as an insurer, and asked that it be dropped as a party to the proceeding. The commissioner overruled this plea but the Indemnity Company neglected and refused to appear and defend at the hearing. The commissioner made no finding as to liability of insurers. The day following the injury to DeGray the plaintiff filed a report of the injury with the commissioner of industries of Vermont at Montpelier in which it stated that the Maryland Casualty Company carried the insurance. This report is made a part of the finding by the trial court and marked Exhibit 2. Other facts in the finding will be referred to as may become necessary. In the present action the plaintiff sues the insurers, jointly, seeking recovery for the sums it has expended under the award and for expenses and an order requiring them, one or both, to pay compensation to the widow-claimant in accordance with the terms of the policies. The Casualty Company demurred to the complaint, and the demurrer was sustained by the court, *Foster, J.*, on the ground that its policy insured the plaintiff for compensation it might be obligated to pay under the laws of the State of Vermont only, and this award having been made under the laws of the State of Connecticut, it was not covered by this policy. The plaintiff refused to plead over and judgment was rendered in favor of the Casualty Company. The Indemnity Company also demurred upon the ground that its policy covered only the plaintiff's business operations in Connecticut and New York State, or operations necessarily incident or appurtenant thereto or connected therewith, and that the place where this particular injury occurred was in Vermont, and the work in that State had no relation to or connection with work in the States of Connecticut or New York. The court, *Foster, J.*, overruled that demurrer on grounds that the policy of this defendant

by its terms indicated that it anticipated that work might be done and obligation by the insurer incurred in other places than Connecticut and New York named in the policy, and that it appeared that these two States were named to aid the insurer in determining the policy rate, and that it was in fact provided in the same policy that it covered injuries "sustained by an employee within the territorial limits of the United States of America or the Dominion of Canada"; and further that this being so a Connecticut contract with a Connecticut resident, to work in Connecticut, under which he was sent into Vermont, and that the work he was sent there to perform was incident and appurtenant to the general business and work of the plaintiff in Connecticut. Upon the overruling of this demurrer, the Indemnity Company filed an answer and a special defense denying liability on essentially the same grounds upon which it had demurred; and also filed a cross-complaint against the Casualty Company which on motion of the latter was expunged by the court. The case was tried on issues joined by the plaintiff and the defendant Indemnity Company, and the court, *Simpson, J.*, gave judgment for the Indemnity Company. It does not appear that any new facts were developed by the trial which essentially changed the underlying question of law presented by the complaint and the demurrer and now before us on appeal. That question was and is whether under the terms of the policy in view of the statutory requirements with which it purports to comply, and with which we must assume the parties intended by their language to comply, the Indemnity Company is liable to the plaintiff-employer in this action.

In this connection we note a statement in the finding to the effect that it was the "clear understanding and intention" of both parties to provide coverage only

for business operations in Connecticut and New York including such as were necessary, incident or appurtenant thereto and did not cover business operations in the State of Vermont. Again it is found that the Vermont contract was in no way connected with work the plaintiff was carrying on in Connecticut, nor was that work necessary, incident or appurtenant to the work the plaintiff carried on in Connecticut or connected therewith or related thereto; and likewise that the work that DeGray was performing in Vermont was not necessary, incident or appurtenant to any work he performed in Connecticut nor connected therewith or related thereto. We can only look upon these findings as conclusions reached by the trial court upon consideration of all the essential subordinate facts, and as such, subject to review in this court. These conclusions touch what is conceded by counsel to be the controlling question in this case.

The opening provision of the policy is "One (a)" providing that the insurerer will pay to any person entitled thereto by an injury under the Workmen's Compensation Act, the entire amount and all instalments of any sum found due thereunder, and the applicable portions of the compensation law therein referred to, together with statutory costs and expenses prescribed by those statutes, and adding, "All of the provisions of each Workmen's Compensation Law covered hereby, shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this policy." Following this, section "One (b)" provides indemnity for the employer "against loss by reason of liability imposed upon him by law for damages on account of said injuries to such of said employees as are legally employed wherever such injuries may be sustained within

the territorial limits of the United States of America and the Dominion of Canada." Sections "Two," "Three," "Four" and "Five" provide, respectively, for inspection and investigation service, defense of suits brought against the employer for compensation, payment of costs of legal proceedings, and provisions for ascertaining the premium on the policy, *et cetera*. But we are then brought to paragraph six which reads as follows: "This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto or connected therewith, whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with or in relation to such work places." To be read in connection with this are the "declarations" attached to the policy which contain, first, a statement of the name and address of the insured and that it is a corporation, second, a statement as to the taking effect and duration of the policy, and lastly (in print) "Item 3,"—"Locations of all factories, shops, yards, buildings, premises or other work places of the employer by town or city with street and number," followed by a typewritten declaration,—"Hartford, Conn., and elsewhere in State of Connecticut, and Lake Placid, Keene, New York and elsewhere in State of New York." The balance of Item 3 is in fine print reading as follows: "all business operations including the operative management and superintendence thereof conducted at or from the locations and premises defined above as declared in each instance by a disclosure of estimated remuneration of employees under such of the following divisions as are undertaken by this employer, (1) All industrial operations upon the premises (2) All office

forces (3) All repairs or alterations to premises (4) Specially rated operations on the premises, (5) Operations not on the premises." Annexed in typewritten form are three classifications of operations, described as "Street or Road Construction," "Grading Land" and "Garbage Collection," with figures showing the estimated pay, estimated premium and the rate. The remainder of the policy is a statement of the conditions to which the contract is subject, but these provisions, "A" to "M" inclusive, are not, for the most part, material to this inquiry.

It is incumbent upon the assured to bring himself within the express terms of the policy, but if the latter contains language of doubtful meaning, the assured is entitled to claim the construction most favorable to himself. On the other hand, the insurer is bound by the express terms of its contract, but this liability is not to be extended by implication, beyond these terms. *First National Bank* v. *Maryland Casualty Co.*, 162 Cal. 61, 121 Pac. 321; *Frankel* v. *Massachusetts Bonding & Ins. Co.* (Mo.) 177 S. W. 775; *Blank* v. *National Surety Co.*, 181 Iowa, 648, 165 N. W. 46; *Rosenthal* v. *American Bonding Co.*, 207 N. Y.162, 100 N. E. 716, 718; *Frink's Admr.* v. *Brotherhood Acc. Co.*, 75 Vt. 249, 54 Atl. 176; *Dresser* v. *Hartford Life Ins. Co.*, 80 Conn. 681, 70 Atl. 39; *Komroff* v. *Maryland Casualty Co.*, 105 Conn. 402, 405, 135 Atl. 388. Policies of compensation insurance, though couched in technical phrases and involved language are, after all, simply written contracts to be interpreted by the same general rules as any other written contract, and enforced in accord with the real intent of the parties. *Western Assurance Co.* v. *Altheimer*, 58 Ark. 565, 25 S. W. 1067, 1069; *Yoch* v. *Home Mutual Ins. Co.*, 111 Cal. 503, 44 Pac. 189. If we are to arrive at its true meaning and intent, the policy must be considered as a

whole. *Finlay* v. *Swirsky*, 103 Conn. 624, 131 Atl. 420. What then is the effect of paragraph six upon the general terms of the policy which preceded it? One of the most obvious purposes of the paragraph is to limit the liability imposed by the general terms. These latter are broad enough to cover the liability of the employer to any of his employees anywhere under the provisions of such compensation laws "as may be applicable thereto, cited and described in an endorsement attached to this policy." This would cover compensation for DeGray since he was working under a contract which was governed by the Connecticut compensation law. This is the liability for which the plaintiff contends, but it entirely ignores the provisions and effect of paragraph six. It is apparent that there could have been no purpose in the addition of this paragraph unless it was to still further restrict its undertaking to the work being done at certain specified "work places," and this is not forbidden by our present Compensation Act. In construing the policy, we cannot ignore these restrictive provisions, and we must bear in mind that the particular language of a contract must prevail over the general. 2 Elliott, Contracts, § 1532; 2 Williston, Contracts, § 619. We are unable to see, in the language used, any intention to make the place of the contract, the test of the liability of the insurer. On the contrary, it points unmistakably to the *work* being done at the *specified work places,* or work elsewhere which is necessary, incident, appurtenant to or connected with the work being done in such specified work places. It is permissible for the parties to a compensation insurance contract to thus limit the liability to particular work at particular places. 6 Cooley's Briefs on Insurance (2d Ed.) p. 5628; *Astrin* v. *East New York Woodwork Mfg. Co.,* 210 N. Y. App. Div. 720, 206 N. Y. Supp. 524; *Levine*

v. *East New York Electric Corp.*, 210 N. Y. App. Div. 730, 206 N. Y. Supp. 527; *Horseshoe Coal Co.* v. *Maryland Casualty Co.*, 208 Ky. 634, 271 S. W. 670. The liability of the insurer under the present policy is thus limited to compensation for injuries incurred in work being done by the employer in the States of Connecticut and New York or in such work elsewhere as can be shown to be necessary, incident, appurtenant to or connected with the work in Connecticut or New York State. It therefore does not cover the case of DeGray unless the work in Vermont on which he was engaged bore this relation to the work in Connecticut, where he had made his contract. "The contract of insurance . . . shall be a contract for the benefit of any employee who shall sustain an injury arising out of and in the course of his employment . . . by reason of the business operations described in the policy, while conducted at any working place therein described or elsewhere in connection therewith." General Statutes, § 5283. But the plaintiff contends that to recognize this claim of restricted liability only, violates that provision of our compensation law which requires that "the entire liability of the employer" shall be assumed in compensation policies in this State. General Statutes, § 5256. This statute does not require coverage for the entire liability of an employer, anywhere and at any time; but such liability of the employer as the insurance company undertakes to assume, must be assumed in its entirety. Full coverage of the entire liability of an employer at a given place on specified work, fully meets the intent of the statute in this respect.

If this were not so, and the construction claimed for the statute by the appellant was the correct one, it would be necessary for an employer in all cases to obtain a single policy covering all his liability in every

place, and would prevent his taking out several policies in different companies as § 5255 seems to contemplate, each covering his full liability under Part B on different portions of his work.

We are thus brought to the final and determinative question whether the work which DeGray was doing at the time of the injury was necessary, incident, appurtenant to or connected with the work being done in Connecticut.

The plaintiff insists that the work in Vermont "was directly connected with the general business of the plaintiff in Connecticut." If this be the true interpretation of the language of paragraph six, it has the result of removing all restrictions upon the place where work was carried on, creating liability at any place in the United States or Canada where the workman was engaged in road building operations. This would contravene the fundamental purpose of paragraph six, which was to impose rather than to remove restrictions upon the liability assumed, by the preceding general terms of the policy.

The case of *Pettit* v. *Reges*, 242 N. Y. 272, 151 N. E. 450, furnishes a close parallel to the one under discussion. The employer was engaged in the maintenance, alteration and repair of buildings. The policy declared upon certain locations in which the business was to be conducted. The injury occurred to an employee who was working on the excavation of a cellar outside the location described in the policy. The policy was in what is known as standard form as are most of those in the many cases we have examined, containing provisions practically identical in tenor with those in the policy we are considering. In its opinion the court said, *inter alia:* "When . . . we turn to the provisions of the 'declarations' which are made a part of the policy it seems to us that they clearly indicate

that the policy was intended to furnish insurance for operations upon and in connection with certain enumerated premises and was not intended, as claimed by the respondent, to furnish insurance for the general business of altering, removing or repairing buildings wherever they might be situated. . . . The provisions . . . indicate an intent to insure against accident within the boundaries of the different premises which were described and also against those which were incidental to the operation of those premises. It is said that the agreement, 'shall include all operations necessary, incident or appurtenant thereto or connected therewith whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with or in relation to such work places.' It was appreciated that a workman who was engaged in the operation of these specific pieces of real estate might have occasion in connection therewith to discharge some duty which was not upon the premises but which nevertheless would be connected with and relate to his work there being performed and we think that the expression 'operations not on the premises' is to be interpreted in the light of all of these provisions and is to be construed as meaning an operation which although not on the premises was still connected with the work there being performed."

In *Neubeck* v. *Doscher,* 204 N. Y. App. Div. 617, 199 N. Y. Supp. 203, the same process of reasoning was followed. The policy was in standard form. The employer was engaged in the operation of creameries at certain places in New York State, specified in the declarations, and the employee was injured while delivering cream in the city of New York, which was not one of the specified locations. In holding that the injury was not within the terms of the policy, the

court, citing paragraph six, which is in the same terms as in the present case, said: "What it undertakes to do is to cover business operations in Pratts and Kerhonkson and operations necessary, incident and appurtenant thereto or connected therewith so long as such connection and relation is with such 'work places.' . . . We are unwilling to take the position that specifying the locations of business operations under such policies has no significance. It is one of the means by which liability is restricted. *Bahr* v. *National Fire Ins. Co.*, 80 Hun (N. Y.) 309 [29 N. Y. Supp. 1031]. The insurance carrier says he will insure your employees located at Pratts, New York, and Kerhonkson, New York, whether engaged immediately there in making or manufacturing cream or engaged in any way connected therewith or incident thereto. The injury must grow in such fashion out of the work carried on at 'such work places.' "

The reasoning adopted in these cases is convincing and logical and reaches a conclusion, as it seems to us, consonant with law and the real intent of the parties at the time the contract was entered into. There are certain facts found by the trial court which lend strong support to this conclusion as to the real intent of the parties in the policy we are considering. For the purpose of determining the premium to be paid on the policy, the insurer audited the pay roll sheets in the office of the insured, but at no time audited those of the Vermont job and the pay roll for that job was not considered in determining the amount of the premium to be paid by the employer, and these were thus disregarded with the full knowledge of the employer's officers.

The employer, after obtaining the Vermont contract, took out compensation insurance in that State, and believed that it covered all work done in that

State, as shown by the further fact that when the agent of the present defendant insurer offered to endorse the policy now in question so as to include the Vermont contract, the plaintiff's officers informed it that it was not necessary as it had taken out a policy in Vermont covering that contract. The day after the accident to DeGray, the plaintiff employer filed a report of the injury with the commissioner of industries in Vermont stating that the insurer carrier was the Maryland Casualty Company which had written the policy in that State. These facts are quite inconsistent with the plaintiff's present claim that both parties understood and intended that the Indemnity Company policy covered an employee who was injured while at work on the Vermont job. We are brought to the conclusion that the trial court was justified by the subordinate facts in holding that the intent of the parties was as stated, and that the Indemnity Company policy does not cover the injury to DeGray, under the circumstances.

Since this is determinative of the case as between the plaintiff and the Indemnity Company, it is unnecessary to discuss the various reasons of appeal.

As to the Maryland Casualty Company, one of the parties defendant and an appellee, it is sufficient to point out that the award for which the employer is seeking indemnity in this action, was made by a commissioner under the compensation law of the State of Connecticut. The obligation of the Casualty Company, if any, was determinable by the compensation law of the State of Vermont, and no award by a commissioner in Connecticut under the Connecticut Act could in itself serve to create a liability under the Vermont Act. The demurrer of the Casualty Company to the plaintiff's complaint was properly sustained.

The conclusion that neither the employer nor the

claimant has a valid claim under the Indemnity Company policy, is one which a correct application of legal principles makes inevitable. That it does not accord with the general purpose and intent of our compensation law in some important respects, is quite evident. The purpose of our legislation in making specific requirements as to insurance under the Workmen's Compensation Act, clearly was to protect the employee against the financial inability or failure of the employer to meet the burdens imposed by the law. Our Act has extra-territorial effect in some cases, as in this, rendering the Connecticut employer liable to the employee even though the latter is injured in the performance of his duty outside the State. *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, 94 Atl. 372; *Douthwright* v. *Champlin*, 91 Conn. 524, 526, 100 Atl. 97; *Hopkins* v. *Matchless Metal Polish Co.*, 99 Conn. 457, 461, 121 Atl. 828; *Harivel* v. *Hall-Thompson Co.*, 98 Conn. 753, 120 Atl. 603.

Since our Act permits a restriction such as in the present policy it is not possible even though the employer is liable, to comply with the statutory permission given to the commissioner to make his award directly against the insurer as well as against the employer. General Statutes, § 5285. We have held that, in view of this statute, the award should ordinarily be made against both insured and insurer. *Witchekowski* v. *Falls Co.*, 105 Conn. 737, 741, 136 Atl. 565. Under policies and circumstances such as this, it is obvious that the financial irresponsibility of the employer would leave the employee remediless, a result which our legislation was intent upon obviating when it provided for compensation insurance. Were it possible for us to hold that a compensation insurance policy must cover the liability of the employer for all employees having a legal claim on him by reason of a

contract made in Connecticut, these obvious defects in our attempt in this State to protect the employee against an irresponsible employer, would be obviated. As the law now stands, it does not protect the employee in the exceptional case such as this. An extract from the opinion in *Hopkins* v. *Matchless Metal Polish Co.*, 99 Conn. 457, 464, 465, 121 Atl. 828, though referring to a different state of facts, is in point. "Mr. Bradbury, in Bradbury's Workmen's Compensation (3d Ed.) 88, and in his note in 9 Anno. Neg. & Comp. Cases, 918, 932, has pointed out with especial force the difficulties which will beset employers, having employees in many States, in complying with the statutes and rules enforced in the various States, if the law of the place of the accident determines the place of compensation. Almost equally difficult would be the position of the employee. Each, Mr. Bradbury says, would have great difficulty in determining his rights and liabilities. 'It would seem,' he says, 'that the application of the doctrine that the parties should be governed by the workmen's compensation law of the State where the contract of employment was made, would settle very many of the difficulties and conflicts which are bound to arise, and that any other doctrine would greatly multiply these difficulties.' " What is thus said of the parties to the contract of employment may be said with equal reason of the parties to the contract of compensation insurance.

There is no error.

In this opinion the other judges concurred.