## Manufacturers Casualty Insurance Co. v. Daison Mfg. Co., Inc.

*Ernest N. Votaw,* of Conard & Middleton, for plaintiff.

*Wolf, Block, Schorr & Solis-Cohen,* for defendant.

Lewis, J., January 25, 1932.—On March 25, 1929, the defendant, through the Elberson Agency, procured a standard workmen's compensation insurance policy, issued by the plaintiff for a period of one year from March 25, 1929. The advance premium of $57.25 was paid when the policy was issued. In the policy of insurance the employees of the insured were divided into three classes:

(1) Clothing and furnishing goods manufacturing, (2) clerical office employees, (3) salesmen (outside), collectors and messengers.

The issue here centers around the original policy classification of defendant's business as "clothing and furnishing goods manufacturing," the rate of premium for this business being 20 cents per $100 of payroll.

A copy of the policy was filed with the Pennsylvania Compensation Rating and Inspection Bureau, an official bureau created under the statute hereinafter discussed. The bureau, in November, 1929, notified the plaintiff insurer of a change in the classification of the first class of employees to the following: "Paper goods manufacturing" at the then premium rate of 65 cents per $100 of compensation, which was subsequently reduced to 60 cents. Upon receipt of notice of the changed classification, plaintiff forwarded an endorsement showing the modification in the rate of premium charged on said policy to the Elberson Agency, through whom the policy had been issued. The defendant at the trial contended that it had not received any copy or notice of the endorsement, but conceded that it had received notice of the claim for the increased premium effected by the change in classification on May 17, 1930.

On March 25, 1930, defendant's payrolls were audited and defendant thereupon received a bill for the additional premium calculated in accordance with the then effective classification and rate fixed by the rating bureau, the defendant having paid the amount concededly owing as premium upon the original classification. Claim was made for the balance of $511.52, with interest.

The policy contained an endorsement designated "Standard Pennsylvania Workmen's Compensation Endorsement," providing, in clause 6, as follows:

"This policy is issued by the insuring company and is accepted by the insured employer with the agreement that all premium rates are subject to increase or decrease in accordance with the rate manual and rating plans approved by the Insurance Commissioner of Pennsylvania, such increase or decrease, if any, to be expressed by endorsement naming the effective date thereof; and provided, further, that if any operations are undertaken by the insured employer during the term of the policy, but are not described or rated in the declaration of the policy or endorsement attached thereto, then the premium rates of the policy are subject to change in accordance with a rate card promulgated for the insured employer and approved by the Insurance Commissioner of Pennsylvania, or if no rate card has been promulgated, then in accordance with the rate manual approved by the Insurance Commissioner of Pennsylvania, such change, if any, to be made by endorsement within four months after the termination of the policy."

The policy itself contained the following provision:

"If any operations as above defined are undertaken by this employer but are not described or rated in said declarations, this employer agrees to pay the premium thereon, at the time of the final adjustment of the premium in accordance with condition C hereof, at the rates and in compliance with the rules of the manual of rates in use by the company upon the date of issue of this policy. . . . If the earned premium, thus computed, is greater than the advance premium paid, this employer shall immediately pay the additional amount to the company; if less, the company shall return to this employer the unearned portion, but in any event the company shall retain the minimum premium stated in said declarations. . . ."

It is the duty of the state insurance commissioner, pursuant to the Act of May 17, 1921, P. L. 682, article VI, section 654 (40 PS § 814), to supervise and regulate the classification of risks and premium rates applicable to workmen's compensation insurance written within the State of Pennsylvania in order to

insure uniform, reasonable and adequate rates to be applied to risks covered by workmen's compensation insurance policies, and to prohibit discrimination between insurance risks of the same class. The act specifically prohibits the issuance or renewal of any policy by any insurer except in accordance with the classifications, etc., promulgated by the state rating bureau. The said act provides:

"The classification of risks, underwriting rules, premium rates and schedule or merit rating plans for insurance of employers and employees under 'The Workmen's Compensation Act of nineteen hundred and fifteen,' and acts amendatory thereof, shall be established by one or more rating bureaus, situate within the Commonwealth of Pennsylvania, subject to supervision and to examination by the insurance commissioner and approved by the insurance commissioner as adequately equipped to compile rates on an equitable and impartial basis. Such schedule or merit rating plans shall be applied only by the approved rating bureau or bureaus, and in the preparation of schedules, no employer shall be discriminated against or penalized because of physical impairment of any employee or because of the number of dependents of any employee.

"No risk classification, underwriting rule, premium rate, or schedule or merit rating plan shall take effect without the consent of the insurance commissioner, and he may withdraw his approval whenever, in his judgment, the same is inadequate or discriminates unfairly between the risks of essentially the same hazard.

"Neither the State Workmen's Insurance Fund nor any insurance corporation, mutual association or company shall issue, renew or carry any policy or contract of insurance against liability under 'The Workmen's Compensation Act of one thousand nine hundred and fifteen,' and acts amendatory thereof, except in accordance with the classifications, underwriting rules, premium rates and schedules or merit rating promulgated by the rating bureau aforesaid for the risk insured and approved by the insurance commissioner for such insurer.

"A complete copy of every policy or a true copy of the substantive provisions of any policy or contract of insurance against liability under 'The Workmen's Compensation Act of one thousand nine hundred and fifteen,' or acts amendatory thereof, and a true copy of every endorsement upon any such policy and of every agreement pertaining thereto, shall be filed with the rating bureau aforesaid within a reasonable time after the effective date of any such policy, endorsement, contract or agreement."

The public policy of this state as expressed in the act of assembly governs the determination of the principal issue here involved. We deem unnecessary any extensive discussion of the defendant's contention that the endorsement referred to in paragraph 6 of the "Standard Pennsylvania Workmen's Compensation Endorsement Attached to the Policy" is ineffective for want of actual notice to defendant. Whether or not the contract of insurance provided for such actual notice to defendant prior to the expiration of the policy or whether notice to the Elberson Agency, through whom the policy had been issued, is sufficient to charge defendant with knowledge of said change need not be determined, inasmuch as, under our view of the controversy, the interests of public policy and the statutory provisions supersede and control any contract provisions concerning the rate of premiums to be paid.

The terms of the policy itself contemplate a readjustment of rates upon a reclassification or reinspection of the insured's business. Accordingly, upon such reinspection the insurer has been held entitled to the increased rate contemplated in such case: Horseshoe Coal Co. *v.* Maryland Casualty Co., 208

Ky. 634, 271 S. W. 670; 3 Couch's Cyclopedia of Insurance Law of 1869, section 583 a. The insurance law recognizes the rating association. The rates and schedules fixed by the rating bureau within the State of Pennsylvania are intended to be properly adjusted to the risks and to meet with the approval of the insurance commissioner, who is given supervision over them. The insurer is expressly controlled by the classifications and rates fixed by the bureau. To permit the insured to deny the validity or efficacy of the endorsements filed with the rating bureau would nullify the purpose and intent of the law as evidenced by the act of assembly and our general public policy against discriminations and rebates in favor of particular employers.

"A contract to disregard an increase in such rates or basis rate and to ignore the disapproval of the rating association and, therefore, of the superintendent of insurance was against public policy and void. . . . In other words, the insurance company could not agree with its insured that the premium rate fixed by it would not be changed when the rate-making associations under the laws of the State of New York demanded a higher rate. Such a contract would be illegal. . . :" Peabody & Co. v. Travelers' Ins. Co., 240 N. Y. 511, 148 N. E. 661, 42 A. L. R. 1090.

Workmen's compensation insurance has developed into a vast business of great concern. The question before us is important. Can the theory and practice under which workmen's compensation insurance rates are regulated by the state be nullified by (a) any private bargaining or contract, and (b) any act or conduct on the part of the insurer in his relations with the insured which might ordinarily constitute a waiver or an estoppel against it? The rationale and purposes underlying the statutory limitations of the power of the insurance company, issuing workmen's compensation coverages, and the insured to regulate by contract the rates of premium to be charged upon particular policies are:

(1) To protect injured workmen and the dependents of those killed in employment accidents by insuring the good financial stability of workmen's compensation insurance companies, which requires the maintenance of an adequate reserve on the basis of rates fixed by the state; (2) to guard against rebates, favoritism or discrimination in rates or premium, the effect of which would harm employers as well as injured workmen; and (3) to protect employers against excessive rates. See Employers L. Assur. Co. v. Cone Co., 124 Misc. Rep. (N. Y.) 614.

Considering the provision of the endorsement that the policy was issued and accepted by the employer with the understanding that the rates and premiums were subject to modification and revision in accordance with the established rate manual, and further bearing in mind the principles upon which our public policy has been founded, we are constrained to hold that the parties have contracted with reference to the statutory and legal rates and that the rate specified in the policy upon its issuance should be considered as tentative merely. Any other holding would make possible or encourage a system of rebates and discriminations which would tend to undermine the entire structure of rate making.

On this subject it might be well to examine the Act of May 17, 1921, P. L. 682, article III, section 346 (40 PS § 471), and the Act of May 17, 1921, P. L. 682, article V, section 546 (40 PS § 696) for legislation dealing with discrimination, rebates and inducements in connection with certain types of insurance policies. See Reed v. Philadelphia Life Ins. Co., 50 Pa. Superior Ct. 384 (1912), where Porter, J., in discussing the Act of May 3, 1909, P. L. 405, said:

"One of the reasons for the enactment of such legislation as we find in the statute with which we are now dealing is that life insurance is a business in which the public have an interest and it is but just that all persons may have the advantage of life insurance upon equal terms and that those terms should be disclosed by the policies which the companies write. This statute, for the purpose of protecting the interest of all who may insure their lives, embodied provisions intended to protect the treasuries of insurance companies from depletion by their own officers, through the payment of rebates, and from the irregular action of their agents in making collateral agreements as to contracts of insurance, not clearly disclosed by the policies." The statutory enactments relating to rebates, inducements and discriminations in connection with certain types of insurance constitute a clear declaration of the public policy embodied in those acts. The same policy was again clearly manifested when the provisions of the Act of May 17, 1921, P. L. 682, were written, which amended the Workmen's Compensation Act of 1915, and acts amendatory thereto, as a result of which rating bureaus, subject to the supervision and to the examination of the insurance commissioner, were established, and discrimination between risks of essentially the same hazard was prohibited.

No question can be raised as to the power of the state to regulate and control rates of insurance premium: German Alliance Ins. Co. v. Lewis, 233 U. S. 389. Particularly is this true with respect to workmen's compensation insurance which is intended to insure, by the creation of a state insurance fund or by the substitute method provided, the prompt receipt by the injured employee or his dependents of a certain sum undiminished by litigation expenses: Jensen v. Southern Pacific Co., 215 N. Y. 514.

In all cases considering this character of insurance, certainty of payment to the insured workman is stressed.

"It is not only the right of the state [says Shientag, J.] but it is its duty to see to it that the financial stability of insurance carriers is maintained and that a just and adequate system of rates and premiums is established and adhered to. The case is somewhat analogous to that arising under the provision of the Interstate Commerce Act, that no carrier shall engage in transportation unless its rates are filed and published, and that no carrier may charge greater or less compensation for transportation than the rates specified in the tariffs filed:" Employers Liability Assur. Corp. v. Success Uncle Sam Cone Co., 124 Misc. Rep. (N. Y.) 614, 618. See, also, 3 Couch's Cyclopedia of Insurance Law 1869, section 582 a; Penna. R. R. Co. v. Titus, 216 N. Y. 17; Central R. R. of N. J. v. Mauser, 241 Pa. 603 (1913); Louisville & Nashville R. R. Co. v. Maxwell, 237 U. S. 94.

"The state legislature may delegate its authority. It may empower a commission or administrative board or bureau to regulate or fix rates to carry into effect the will of the state as expressed by its legislation. In such case, the rates established by such bureau "must be made general in their nature and applicable alike to all persons and corporations under like circumstances, and must not in terms be made applicable to only one person or corporation to the exclusion of other persons or corporations under like circumstances:" 10 C. J. 410, section 630.

The opinion of Stewart, J., in Central R. R. of N. J. v. Mauser, supra, is by clear analogy decisive of the issue before us.

We are unable to agree with the defendant's contention that want of direct notice to the insured of the endorsement is effective as an estoppel against the right of the insurer to recover here, and this is so, even though prejudice to the defendant by want of notice may be shown. The defendant obtained the

full benefit of the indemnity provided under the policy during its full term and could not, under the law, have procured insurance, considering its business as conducted during the said year, for any lesser premium. Furthermore, it concededly received notice of the change of classification resulting in the increased premium on May 17, 1930, which was "within four months after the termination of the policy," as provided by the original endorsement.

While the question of estoppel might under other circumstances be considered as possibly effecting a bar to any claim of the insurer, the express statutory provisions governing rates as well as the public policy of this Commonwealth which give efficacy to such regulations, preclude any consideration of that factor. The policy binds the defendant to the payment of the premium, at the time of its final adjustment, "at the rates and in compliance with the rule of the manual of rates in use by the company." The defendant, by its contract, obligated itself to pay "the earned premium adjusted in accordance therewith [the payroll audit] at the rates and under the conditions herein [as in said policy] specified."

We are accordingly constrained to hold that the plaintiff has shown an undoubted right of recovery for the additional amount of premiums based upon the reclassification. A finding must be entered in favor of the plaintiff in the sum of $511.52 (credit being allowed defendant for the amount paid on account), together with interest from March 25, 1930.