## KELLY–DEMPSEY & CO. v. CENTURY INDEMNITY CO.

### No. 1111.

Circuit Court of Appeals, Tenth Circuit.

April 17, 1935.

Horace G. McKeever, of Enid, Okl. (A. C. Saunders, of Tulsa, Okl., and Van W. Stewart and Harry H. McKeever, both of Enid, Okl., on the brief), for appellant.

Hal Crouch, of Tulsa, Okl. (Philip N. Landa, of Tulsa, Okl., on the brief), for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

The appellant, plaintiff in the court below, brought this cause of action for damages against the defendant indemnity company arising out of a judgment recovered against plaintiff, together with attorney's fees, alleged to have accrued in the defense of that litigation. Issue was joined, and the case tried to the court without the intervention of a jury. A demurrer was interposed to plaintiff's evidence, which was taken under advisement by the trial court. Before decision, the plaintiff interposed a motion to transfer the case to the equity side and leave was sought to file a bill of complaint in equity to reform the insurance contract on which the suit was based. The cause was transferred to the equity side, a new pleading was filed as an amended bill of complaint seeking to reform the insurance contract in certain particulars, but also containing the same basis of relief sought in the petition on the law side. The allegations of the revised pleadings were met by answer on the part of the defendant. At the final hearing the trial court as shown by the record, with the consent of the parties, consolidated the case on the law side with the case on the equity side, and, a jury being waived, proceeded to the trial of the consolidated causes. At the conclusion of the trial, the court made findings of fact and conclusions of law, and entered a formal judgment denying the reformation of the contract sought by plaintiff and any recovery under the terms of the policy, with a general finding in defendant's favor, with costs. From this judgment or decree the plaintiff appeals.

The controversy arose under the following circumstances: In February, 1929, the plaintiff under contract with the Texas-Empire Pipe Line Company began the construction of a pipe line through a portion of the

state of Missouri, which pipe line was completed in August, 1929, and turned over to the pipe line company, which took physical possession and at all times thereafter retained full control of the same. On October 10, 1929, the policy of insurance sued on was issued by the appellee company to run for a period of one year or until October 10, 1930. On March 10, 1930, a minor child living near the pipe line as originally constructed in the state of Missouri suffered an injury from a dynamite cap left on the pipe line by the employees of the plaintiff during the construction of the line. Suit was interposed against the plaintiff company on behalf of the minor which the defendant indemnity company was called upon to defend, but refused, upon the ground that the injury upon which the cause of action was based did not come within the coverage of defendant's policy. Upon the trial, the plaintiff minor received a substantial judgment against the plaintiff as a result of plaintiff's found negligence. This judgment was subsequently settled in a compromise agreement for the sum of $13,000. The plaintiff in the suit at bar then filed its cause of action to recover the amount of the judgment paid by it, together with the necessary attorney's fees in defending the suit as hereinbefore stated.

Three major questions are presented upon the appeal: (1) Whether the entire controversy both on the law and equity side is properly presented to the appellate court by this appeal on the equity side alone; (2) whether the trial court erred in refusing to reform the policy; and (3) whether it erred in denying recovery to the plaintiff upon the policy in the absence of reformation.

■ The first point is suggested by the appellee in the contention that only the record in the equity suit is before the appellate court on this appeal on the equity side and that the case upon the law side will still remain for disposition by the trial court after this appeal is determined. Under the broad terms of 28 USCA § 397 (Judicial Code, § 274a), relating to the amendment of pleadings to meet the exigencies which may arise in the matter of bringing a case from the law to the equity side of the court, or vice versa, it would seem that the suit is properly here by appeal on the equity side. However, if this may be too broad a conception of the objects and purposes of the above-named statute, we have before us a consolidation for trial in the court below of the equity suit and the law action, which in a jury waived case could cause the parties to suffer the loss of no substantial right unless it might be in connection with the difference in rules which govern the consideration of alleged errors by the appellate court on the equity side and in jury waived cases on the law side. It would seem like the height of technicality if, in a litigation of the same general controversy, a portion were tried on the equity side and the other portion on the law side, both being consolidated for the purposes and convenience of trial and adjudicated in a common judgment or decree, that such case would have to be presented to the appellate court under two separate appeals. In the view which we take of the matters here to be considered, we do not regard the point suggested by appellee as controlling or important, but shall regard the whole controversy as properly here for review.

■ Was the trial court correct in finding for the defendant upon the plea for reformation? It found that the instrument sought to be reformed was not ambiguous nor uncertain and that the evidence was not sufficient to warrant equitable relief, in that no grounds for reformation of the insurance policy had been established. Without reciting the terms of the proposed reformation in detail as carried in the amended bill of complaint, it is sufficient to say that the intention was to have carried into the insurance contract such terms as would include a liability for construction work previously done and completed on the pipe line in the state of Missouri, so that the terms of the policy included in the phrase "business operations" would include portions performed prior to the delivery of the policy and so that the phrase "insured premises" would include places where the plaintiff had carried on operations prior to the issuance of the policy.

The principal evidence offered to support the plea for reformation consisted of the testimony of an officer of the plaintiff and the agent of the defendant who wrote the policy. The gist of the evidence is that the said officer believed that he had in the policy delivered to him the coverage which is indicated in plaintiff's application for reformation, although he did not read the policy after it had been delivered to him; and the agent believed that the policy which he had delivered to the officer of plaintiff did cover the hazards he had in mind. The agent testified that, in so far as he knew, he

had made no mistake in the issuance of the policy, but what he intended to deliver was the standard form of indemnity policy the same as had been previously issued by him to the plaintiff company and other companies. He had no authority to deliver other than the standard form. In addition, proofs were offered to the effect that the plaintiff had guaranteed the pipe line for one year and that it wanted a coverage for any liability which might arise out of work which it should do under said guaranty. If it were material to the determination of the point involved, it may be said that the basic evidence that the plaintiff company guaranteed the pipe line for protection against accident for one year consisted of the testimony of the superintendent of the pipe line company to the effect that the officer of the plaintiff company orally told the superintendent that he would do so, but it was apparently not a part of the construction contract.

Where it appears that there was no intention by an agent of a company to deliver a different contract from that contained in the usual form of policy and that any representations made by the agent were due to ignorance of the terms of the policy or misunderstanding of their effect, there is no justification for the reformation of the contract. Travelers' Insurance Co. v. Henderson, 69 F. 762 (C. C. A. 8). To justify the reformation of a contract, there must have been an antecedent agreement which the contract on account of mutual mistake or mistake on one side and fraud on the other failed to express, and the alleged mistake must be supported by proofs of the clearest and most satisfactory character. Southern Surety Co. v. U. S. Cast Iron Pipe & F. Co., 13 F.(2d) 833 (C. C. A. 8); Columbia Nat. Life Ins. Co. v. Black, 35 F.(2d) 571, 71 A. L. R. 128 (C. C. A. 10). In the light of these authorities, we are satisfied that the trial court was correct in denying reformation.

■ Was the plaintiff entitled to recovery under the terms of the policy, unreformed? This point is predicated upon the admitted facts that, while the policy was issued on October 10, 1929, running for a period of one year, and the injury to the child upon which the judgment is based occurred within that year, yet it was at a place where and time when operations by the plaintiff had ceased and the premises upon which it occurred had been turned over to the owner months before. To determine whether or not the policy as issued covered the damage sustained by the plaintiff requires an examination of the terms of the policy applicable to the facts under consideration. The first four paragraphs are as follows:

"The Century Indemnity Company. Hartford, Connecticut. (Herein called the Company.) Does hereby agree with the Assured, named in the Declarations made a part hereof, as follows:

"One: To indemnify the Assured against loss by reason of the liability imposed upon him by law for damages because of bodily injuries, including death at any time resulting therefrom, accidentally sustained by any person or persons except those employed by the Assured or those to whom the Assured may be held liable under any Workmen's Compensation Law. This indemnity subject to the exclusions hereinafter expressed, shall apply only

"(1) In so far as such injuries shall result from the business operations of the Assured disclosed in the Declarations, which operations for the purposes of this insurance shall include operations incident or appurtenant thereto, including ordinary repairs and maintenance of Assured's buildings and equipment;

"(2) In so far as such injuries occur at, within or upon the factories, shops, yards, buildings or other specified work places of the Assured or the public ways immediately adjoining within the territory disclosed in Item 3 of the Declarations, including such part of the property of others within such territory as the Assured may occupy under special contract or permit for the sole purpose of conducting therein or thereon such operations as are disclosed in the Declarations, all of which are herein called 'the Insured Premises,' but this enumeration shall not include public ways not immediately adjoining the Insured Premises which are occupied and used in common with others;

"(3) In so far as such injuries occur elsewhere if caused by the disclosed business operations conducted on the Insured Premises described in said Declarations or by employees of the Assured engaged in such operations who are required in the discharge of their duties to go off the Insured Premises;

"(4) In so far as such injuries occur during the Policy Period defined as such in Item 2 of the Declarations."

Under the term "Declarations" as referred to in the foregoing are items 2 and 3 as follows:

"Item 2:

"The period during which the Policy shall remain in force, unless cancelled as in the Policy provided (herein called the Policy Period) shall be from October 10th, 1929, to October 10, 1930, at twelve and one minute o'clock A. M., standard time, as to each of said dates at the place where any operation covered hereby is conducted, as respects that operation, or at the place where any injury covered hereby is sustained, as respects that injury."

"Item 3:

"Specified locations of all factories, shops, yards, buildings or other work places of the Assured, by Town or City, with Street and Number (herein called the Insured Premises) States of Oklahoma, Missouri and Kansas.

"All business operations, including the operative management and superintendence thereof, conducted at or from the locations and premises defined above as declared in each instance by a disclosure of estimated remuneration of employees under such of the following Divisions as are undertaken by the Assured. 1. All operations upon the Insured Premises. 2. Operations not on such premises."

A fair interpretation of the above provisions is that, to be within the coverage of the policy, the injury must have occurred as a result of business operations conducted upon the insured premises as "factories, shops, yards, buildings or other specified work places of the assured," and within the policy period. No other or further coverage is indicated in the policy by its terms. While the injury occurred during the policy period, it appears that it took place at a time and place when the operations of the plaintiff had ceased and after the work places had been surrendered to another. The attempt of the plaintiff here is to stretch the policy to cover past operations, which are not covered by the policy, as there were no operations at the time of the injury, nor was the place where the injury occurred in the possession or under the control of the insured. We do not feel that the contract can be so construed, and the evidence by the record from indemnity insurance experts is that they had never heard of such a policy. Our conclusion is supported in principle by Boyle-Farrell Land Co. v. Standard Accident Ins. Co., 24 F.(2d) 55 (C. C. A. 8); Horseshoe Coal Co. v. Maryland Casualty Co., 208 Ky. 634, 271 S. W. 670; and Graustein & Co. v. Employers' Liability Assurance Corp., 214 Mass. 421, 101 N. E. 1073. Counsel strongly rely upon Tulare County Power Co. v. Pacific Surety Co., 43 Cal. App. 315, 185 P. 399. An examination of that case, however, discloses that operations were being carried on by the assured at the time the accident occurred, and therefore it is not persuasive as authority upon the facts presented in the case at bar.

The case is affirmed.