No. 33,491

KATIE BASS, Widow of O. H. Bass, Deceased, ARLIE BASS and STARLINE BASS, Minors, *Appellees,* v. C. H. LEBOW and REPUBLIC NATURAL GAS COMPANY, ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, *Appellants* (THE AMERICAN EMPLOYERS INSURANCE COMPANY, *Appellee).*

(71 P. 2d 1071)

Opinion filed October 9, 1937.

*Glenn Porter, Getto McDonald, Dwight S. Wallace,* all of Wichita, *Roy C. Davis, Warren H. White, Frank S. Hodge, William H. Vernon, Jr.,* and *Eugene A. White,* all of Hutchinson, for the appellants.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris, John F. Eberhardt, Glen Porter,* all of Wichita, *Rubert G. Martin,* of Lyons, and *Roy Parham,* of Okemah, Okla., for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for workmen's compensation. Judgment was for the claimants. The employer was held to be principally liable, but his insurance carrier was excused from liability. The judgment also held the Republic Natural Gas Com-

pany and its insurance company secondarily liable and granted to the two above parties the right, in event they should pay the award, to recover the amount so paid from the employer. The employer appeals from that judgment.

The facts are as follows: The employer, Mr. Lebow, was an independent oil operator. He operated three leases in Rice county known as the Collis, Doll and Steckle leases. He carried compensation insurance upon his employees with the American Employers Insurance Company. The workman in this case was employed by Mr. Lebow as a pumper and operator of what is known as a pulling machine. The workman lived on the Doll lease. His salary was $125 a month, with $10 a month allowed for house rent on the lease. This made a total salary of $135 a month. The employer kept this pulling machine on the Doll lease. It was his practice to rent this machine to other oil operators in the field when they needed it and he was not using it. On such occasions he sent the workman in this case to operate this machine and charged $3.50 an hour for it. The Republic Natural Gas Company operated the Wendel lease. On October 10 the superintendent for Mr. Lebow sent Mr. Bass with the rod-pulling machine to the Wendel lease. The gas company had made a contract with Lebow for its use. On that day Bass was killed while operating the machine on the Wendel lease.

Due claim for compensation was made by the widow and children of Bass. There was no doubt that the workman met his death by accident arising out of and in the course of his employment, and that claimants were entitled to the maximum award, nor that an award should be made against the employer Lebow. The dispute is as to whether the insurance carrier for Mr. Lebow is liable. After a hearing the commissioner of workmen's compensation awarded compensation and held Lebow to be primarily liable for the award, and excused the American Employers Insurance Company, the insurance carrier for Lebow. The commissioner further held that the Republic Natural Gas Company and its insurance carrier, the Zurich General Accident and Liability Insurance Company, were secondarily liable and granted to the gas company and its insurance carrier the right, in event it should pay the award, to recover the amount so paid against Lebow. On appeal to the district court this award was approved by the judgment of that court. The appeal to this court is from that judgment.

The question before the commissioner was whether the deceased

workman in the work he was performing at the time he was killed was covered by the policy given Lebow by his insurance carrier. The policy itself, in the place provided in the form for stating where the work places of Lebow were located stated that they were on two leases, and described them by section, range and township number. The workman, as has been seen, was killed while operating a pulling machine on a lease about seven miles away from either one of these leases. It was the contention of the insurance carrier for Lebow that its liability to Lebow under its policy was limited to what should occur on the two leases described in the policy. The commissioner and the trial court agreed with this contention. Besides the inclusion of the two leases in the policy there was some correspondence between Lebow and the insurance company on the subject. This correspondence was also included in the records.

A fair inference to be drawn from this correspondence is that when Lebow first applied for the policy he wanted it to be a blanket policy to cover all his operations in Kansas, or at least in Rice county, and the company refused to write such a policy, but desired it to be written to cover certain definite locations so that the company could arrange for inspections. As the correspondence indicates, the policy was finally issued to cover operations on two leases named, and it was arranged that when Lebow commenced operation on other leases these descriptions would be furnished the company and these locations would be endorsed on the policy. As a matter of fact, one of the leases named was taken out of the policy and another was added by this method. No endorsement with reference to the lease where Bass was killed was ever made. The trial court held that there was nothing in the law to prohibit an insurance company from limiting its liability to certain prescribed areas and this correspondence showed that the employer and the insurance company both construed the policy in this case to cover the lease named.

Lebow contends in this court that the liability of the insurer under the workmen's compensation act cannot be limited by agreement between the insured and insurer.

We will not place this decision on that interesting legal contention, but will consider whether under all the circumstances in this case the liability was limited to the leases named. In the first place, it should be noted that the insurer contends that the parties changed the scope of the policy by their correspondence after the policy was entered into. Naturally such a change would be without the knowl-

edge of the workmen for whose benefit the policy was made in the first place. One more fact should be noted. We are not called on here to consider what would have been the effect if Lebow had taken a crew and commenced drilling operations on some lease other than the ones named in the policy without securing the endorsement referred to in the correspondence. Each time he did this he did secure the required endorsement. The accident to which Lebow is now seeking to make the policy apply occurred to an employee living on a lease named in the policy and carried on the pay roll of that lease, but while he was doing work not on the lease.

An examination of the policy will be of assistance. In the first place, the policy provides that the company will pay to any person entitled thereto any sum to become due that person "(1) because of the obligation for compensation for any such injury imposed upon or accepted by his employer under such of certain statutes as may be applicable thereto, cited and described in an endorsement attached to this policy, each of which statutes is herein referred to as the workmen's compensation law."

It is further agreed that all the provisions of the workmen's compensation law shall become a part of the policy. The policy provides that it shall cover any employee wherever such injuries shall be sustained within the territorial limits of the United States or the Dominion of Canada.

The policy also contains the following provision:

"Six. This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said declaration or elsewhere in connection with, or in relation to, such work places."

The following provision is also of interest:

"A. The premium is based upon the entire remuneration earned, during the policy period, by all employees of his employer engaged in the business operations described in said declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto . . ."

Immediately following the paragraph that sets out the description of the leases where are located the "factories, shops, yards, buildings or other work places of the employer" appears the following provision:

"All business operations, including the operative management and superintendence thereof, conducted at or from the locations and premises defined above as declared in each instance by a disclosure of estimated remuneration of employees under such of the following divisions as are undertaken by this employer."

These provisions in the policy must be considered, as well as the provisions describing the location of the work places of the employer. When so considered it becomes apparent that the policy does not limit the liability of the insurer to what will actually occur on those leases. The policy contemplated that the insurer would be liable for injuries to the employees of the insured while engaged in the operations of the employer as long as the work being done was necessary, incident or appurtenant to the operations of the employer, even though the actual injury should not take place on the property named. To this effect is the holding of this court in *Iott v. Continental Casualty Co.,* 129 Kan. 650, 284 Pac. 823; also, *Robertson v. Labette County Comm'rs,* 122 Kan. 486, 252 Pac. 196.

There remains the question, then, as to whether the work Bass was doing when he was killed, that is, the operation of a rod-pulling machine, was necessary, incident or appurtenant to the operations of Lebow upon the lease in question. On this question the insurer refers us to a statement where Lebow said on cross-examination that the pulling machine does not have anything to do with the drilling for oil or the operation of the lease. This answer will be considered by us together with all the other testimony and evidence in the record. When so considered it becomes manifest that while the pulling machine was not used in the actual drilling of the well, when a well was put on a pump it could not be operated without the use of a pulling machine sooner or later. It was shown that it was the custom in the oil fields to use the pulling machine and to rent one when any particular operator did not happen to own one. This record discloses, too, that Bass was carried on the pay roll at the lease where he lived and that the fact that he was gone occasionally operating this machine made no difference in his pay.

The correspondence between the insurance company and Lebow is relied on by the insurance company to sustain its position here. We have examined that correspondence and have concluded that what the parties were referring to was a circumstance such as had actually happened, that is, the abandonment of a lease by an entire crew, or the shifting of an entire crew to another additional lease,

not as is contended here a mere incidental employment of a workman at another lease.

The judgment of the trial court excusing the American Employers Insurance Company from liability is reversed with directions to enter judgment holding it liable; the balance of the judgment is affirmed.