# Staunton

## Coal Operators Casualty Company v. C. L. Smith & Son Coal Company, Et Al.

September 5, 1951.

Record No. 3847.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Greear, Bowen, Mullins & Winston,* for the appellant.

*Kiser, Vicars & Kiser, J. A. Runyon, Francis D. Burke* and *Kenneth A. Howe,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The Industrial Commission held that the compensation insurance issued by the appellant, herein called the insurer, to C. L. Smith, herein sometimes called the employer, covered T. J. Harris, who was killed as the result of an accident arising out of and in the course of his employment by Smith as a coal miner. On this appeal the insurer denies liability, as it did before the Commission, on the grounds that after the issuance of the policy and before the accident (1) the employer was changed from C. L.

Smith, individual, to C. L. Smith & Son Coal Company, a partnership; and (2) the mining operation was changed to a location different from the one described in the policy; both without notice to the insurer.

Harris was killed June 21, 1949, by the explosion of a carbide container under the tipple while attempting to get some carbide for his miner's lamp. The insurance policy then in effect was a renewal of the original policy issued by the insurer November 19, 1947, for one year, which was renewed to November 19, 1949, and again on the latter date to November 19, 1950, the three policies being in identical terms except as to dates. All were issued on the original application and contained a declaration, based on the application, that the name of the employer was C. L. Smith, individual, and the location of all premises or other work places was "one mile north of Wise, Wise County, Virginia." Under "Classification of Operations" was "1016 Bituminous Mining." Another item of the Declaration was: "This Employer is conducting no other business operations at this or any other location not herein disclosed—except as herein stated: No exceptions."

We need not linger over the defense of non-liability because of change of employer. There was in fact no change. The evidence shows clearly that the name of Smith's son, a fifteen-year-old school boy, was added to satisfy a whim of Smith's wife. Smith remained the sole owner. The report of the accident, made June 22, 1949, gave the name of the employer as C. L. Smith and Son Coal Company, but was signed by C. L. Smith, owner. The change in the name was made in August, 1948, and there were filed in evidence seven checks given for premiums dated from August 3, 1948, to June 6, 1949, signed "C. L. Smith & Son Coal Company By C. L. Smith." The policy was renewed twice in the name of C. L. Smith after the first of these checks was received. The last renewal was made after the insurer's claim adjuster had visited the mine after the accident, inquired whether the son had any interest and was informed that he did not. If the change in name was ever material, the right of the insurer to rely on it was waived. It does not appear to have been material. See *Commercial Cas. Ins. Co.* v. *Industrial Acci. Comm.*, 91 Cal. App. 304, 266 P. 988.

Even had Smith formed a partnership with his son, it has been held that the insurer could not have avoided liability on that ground, but we do not reach that question here. *Reed* v.

*Industrial Acci. Comm.*, 10 Cal. (2d) 191, 73 P. (2d) 1212, 114 A. L. R. 720, and Annotation at p. 724.

· The policy involved was on a standard form approved by the Industrial Commission as required by Code, § 65-109. By its terms, as well as by the terms of the Virginia Workmen's Compensation Act (Acts 1918, ch. 400, p. 637, as amended, now Code, 1950, §§ 65-1 ff.), the provisions of the Act are part of the policy.

Section 65-99 requires that ''Every employer subject to the compensation provisions of this Act shall insure the payment of compensation to his employees in the manner hereinafter provided. * * *.''

Section 65-107 provides: ''No policy of insurance against liability arising under this Act shall be issued unless it contains the agreement of the insurer that it will promptly pay the person entitled to the same all benefits conferred by this Act and all installments of the compensation that may be awarded or agreed upon and that the obligation shall not be affected by any default of the insured after the injury or by any default in giving notice required by such policy or otherwise. Such agreement shall be construed to be a direct promise by the insurer to the person entitled to compensation, enforceable in his name.''

The Commission held that ''the liability of the insurer is in all respects the same as that of the employer throughout the Commonwealth of Virginia. * * * The coverage afforded is inclusive, without restriction or limitation.'' We are of opinion to sustain the award as against the defense of change of location, but in terms somewhat less broad.

The case of *Georgia Cas. Co.* v. *Ft. Wayne*, 82 Ind. App. 396, 145 N. E. 284, cited by the Commission, was a suit by the insurer to collect an additional premium from the assured on the theory that under the Indiana law it was liable for compensation to all the employees of the Park Board of the city, notwithstanding the coverage stated in the policy was only on employees engaged in the care of trees. The claim was based on the Indiana statute, Acts 1919, § 73, p. 173, providing that all insurance policies insuring payment of compensation under the act ''shall be conclusively presumed to cover all the employees and the entire compensation liability of the insured;'' and that any provision attempting to limit or modify such liability shall be wholly void. 145 N. E. at p. 286. The court held that this provision did not limit the right of the insurer and insured to contract with respect

to the liability of the insurer as indemnifier, but was for the purpose of protecting the employees of the insured in their right to hold the insurer for the payment of compensation under the provisions of the act.

It will be observed that section 65-107, *supra,* does not in terms require, as did section 73 of the Indiana law, that all policies shall be conclusively presumed to cover all employees and the entire compensation liability of the insured.

Even as between the insurer and the employee, a number of courts have recognized that the insurer may by its policy limit its risk so as not to cover the entire liability resting upon the employer. The differing views arise in part at least from the different language of the various acts. 58 Am. Jur., Workmen's Compensation, § 564, p. 926; Annotations, 45 A. L. R. 1329, and 108 A. L. R. 812.

In *Miller Bros. Const. Co.* v. *Maryland Cas. Co.,* 113 Conn. 504, 155 A. 709, the construction company sought indemnity against its liability for an injury to one of its employees in Vermont under a policy applying to work places in Connecticut and New York, relying on a provision of the Connecticut compensation law requiring that "the entire liability of the employer" shall be assumed in compensation policies in that State. The court held that this statute did not require coverage of the entire liability of the employer anywhere and at any time, "but such liability of the employer as the insurance company undertakes to assume must be assumed in its entirety. Full coverage of the entire liability of an employer at a given place or places, on specified work, fully meets the intent of the statute in this respect."*

However, in the case of *In re Cox,* 225 Mass. 220, 114 N. E. 281, the insurer was held liable for the injury to an employee of the assured in a shoe store in Boston under a policy applicable on its face to shoe and military goods manufacturing in Framingham, on the ground that the Massachusetts compensation law did not permit "an employer to become a subscriber as to one part of its business and to remain a nonsubscriber as to the rest

---

* The following cases also recognize the right to limit the risk to less than the entire liability of the employer: *Bayer* v. *Bayer,* 191 Mich. 423, 158 N. W. 109; *Horseshoe Coal Co.* v. *Maryland Cas. Co.,* 208 Ky. 634, 271 S. W. 670; *Continental Cas. Co.* v. *Woerpel,* 190 Wis. 122, 208 N. W. 882, 45 A. L. R. 1323; *Fidelity, etc., Co.* v. *Baker,* 162 Okla. 10, 18 P. (2d) 894; *Ocean Acci. etc., Corp.* v. *Industrial Acci. Comm.,* 208 Cal. 157, 280 P. 690; *Simpkins* v. *Steffen,* 255 N. Y. 65, 174 N. E. 64; *Astrin* v. *East New York Woodwork Mfg. Co.,* 210 App. Div. 720, 206 N. Y. S. 524; *Bass* v. *Lebow,* 146 Kan. 487, 71 P. (2d) 1071.

of a business which is in substance and effect conducted as one business." The court said it did not include in the scope of the decision "those conducting two wholly different and distinct kinds of business quite disconnected with each other in place, nature and management." "The practical administration of the act," the court said, "renders it highly desirable that a single rule of liability should apply throughout any single business;" that the "obligation of the policy is 'to pay the compensation * * * provided for by The Workmen's Compensation Act * * * to any person * * * to whom such compensation; * * * shall become due.' The insurer, therefore, has assumed an obligation as broad as the act, and the employer was a subscriber. This proceeding does not relate to the rights and duties between the insurer and the employer." 114 N. E. at pp. 282, 283. See also *Anderson's Case,* 276 Mass. 51, 176 N. E. 518; *Maryland Cas. Co.* v. *Taunton,* 294 Mass. 69, 200 N. E. 775; *Fidelity, etc., Co.* v. *Cook,* 301 Mass. 305, 17 N. E. (2d) 181; *Skuey* v. *Bjerkan,* 173 Minn. 57, 217 N. W. 358; *Empey* v. *Industrial Comm.,* 91 Utah 234, 63 P. (2d) 630, 108 A. L. R. 801; *United States Cas. Co.* v. *Dunlap,* 181 Okla. 72, 72 P (2d) 733.

In *Barron* v. *Standard Acci. Ins. Co.,* 122 Tex. 179, 53 S. W. (2d) 769, the employer operated two plants, one a stone cutting and polishing plant in Houston and the other a stone quarry in Kinney county. The policy was intended to cover employees in the Houston plant only, and stone quarrying was expressly excluded. The court said the rule was well established that employers operating under the Workmen's Compensation Act could not cover part of their employees and leave part uncovered, where such employees are engaged in the same general business or enterprise (citing the *Cox Case, supra*); but that it was equally well settled that "where an employer conducts two separate and distinct kinds of business, each business involving different risks, pay rolls, and requiring a different premium for compensation insurance, he may elect to insure a class of employees in one business and not to insure a class of employees in the other business. Therefore a policy issued to cover a class of employees in one business, as was done here, which expressly excludes the class of employees in a different and distinct business, will not be construed to cover employees in both businesses, and a recovery cannot be had under the policy by an employee not covered by the policy." 53 S. W. (2d) at p. 770.

By the policy in judgment the insurer agreed, *inter alia*:

"I. (a) To pay Promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due."

That agreement was subject to certain stated conditions, the only one here material being paragraph A, which provided: "The premium is based upon the entire remuneration earned, during the Policy Period, by all employees of this Employer engaged in the business operations described in said Declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto; * * *. If any operations as above defined are undertaken by this Employer but are not described or rated in said Declarations, this Employer agrees to pay the premium thereon, at the time of the final adjustment of the premium in accordance with Condition C hereof," at the rates specified.

The business operations described in the Declarations are "Bituminous Mining." The location of the premises is stated to be "One Mile North of Wise, Wise County, Virginia." There is no express exclusion of similar operations at other places. The facts are that when the mine a mile north of Wise, which the employer was operating during the policy period, was mined out, he moved his bituminous mining to another operation, on Dotson Creek, in the same area. When that mining proved unprofitable, he moved to another mine about a quarter of a mile away, also on Dotson Creek, between three and four miles from Wise, where the accident happened.

There is no suggestion in the evidence that these changes were material to the risk. The evidence is to the contrary. The death of Harris was not due to any condition of the mine, but to an explosion outside of the mine. The insurer made no inspection of the mine being operated when the original policy was issued, as provided for in the policy. Its first inspection of that mine was made some four months later. A few days after the accident the mine inspector of the insurer visited the Dotson Creek mine, and its claim adjuster was there two or three times. Yet, with full knowledge of its location, the insurer renewed the policy and described the location of the operation in exactly the same language as in the original policy.

██ The practical construction of a contract by the parties themselves is entitled to great weight in determining its proper interpretation. 4 Michie's Jur., Contracts, § 47, p. 388; *Commercial Standard Ins. Co.* v. *Remer,* 10 Cir., 119 F. (2d) 66 . If the coverage of the policy here be doubtful, the insurer's interpretation that the original description of the location of the business was adequate for the new location, as evidenced by its renewal after knowledge of the facts, is conclusive, and it has waived its right, if any it had, now to rely on that defense against liability.

██ Aside from the question of waiver, we hold that the policy, by its terms and the provisions of the Compensation Act which became a part of it, covered Harris at the operation where the accident occurred.

The insurance agreement further provided:

"VI. This agreement shall apply to such injuries so sustained by reason of the business operation described in said Declaration which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said Declarations or elsewhere in connection with, or in relation to, such work places."

The business operation described in said Declaration is bituminous mining. That was the business operation in which the employer and the employee were engaged at the time of the accident. It is admitted that the dependent of the employee is entitled to compensation. By section 65-107, *supra,* made part of the policy, the insurer agreed that "it will promptly pay the person entitled to the same all benefits conferred by this Act." Section 65-109, *supra,* provides that the form of all compensation insurance policies shall be approved by the Industrial Commission. In its opinion the Commission stated: "The description of the place in the standard policy approved by the Virginia Commission is for administrative purposes and to facilitate inspections." Therefore, with respect to the employer's business operation of bituminous mining, the insurer, so far as the employee is concerned, "assumed an obligation as broad as the Act," and not limited to the one location stated in the Declarations. It may be added that Harris' name was on the payrolls submitted to the insurer as the basis for payment of premiums and the premium was paid on his coverage.

The award is                                                    *Affirmed.*