PRESENT:  All the Justices

CAROL ROBINSON-HUNTLEY

                                        OPINION BY
v.    Record No. 131065        JUSTICE WILLIAM C. MIMS
                                    April 17, 2014
GEORGE WASHINGTON CARVER MUTUAL
HOMES ASSOCIATION, INC.


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                     Louise M. DiMatteo, Judge


     In this appeal, we consider whether a contract obligated a

real estate cooperative to make plumbing repairs and whether

the circuit court abused its discretion by declining to award

attorneys' fees under Code § 55-492(A).

         I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     In 1998, Carol Robinson-Huntley inherited an interest in

the George Washington Carver Mutual Homes Association, Inc.

("the Association"), a real estate cooperative created in 1949.

She became a member of the cooperative and executed a mutual

ownership contract ("the Contract") with the Association.

Under the Contract, Robinson-Huntley acquired a possessory

interest in a unit identified as 1352 South Rolfe Street in

Arlington, Virginia.  A paragraph of the Contract ("the Provide

and Pay Provision") required that "[t]he Association shall . .

. provide and pay for property including the [m]ember's

dwelling, except that the [m]ember shall make minor interior

repairs and provide all interior and decorating." (Emphasis in original.)

In 2011, Robinson-Huntley began experiencing significant problems with the plumbing in her unit, temporarily rendering the sinks and toilets inoperable. A plumber determined that the problem was caused by deterioration in the pipes under the floors and within the walls of her unit. The pipes needed to be replaced at a cost of $6000. Robinson-Huntley informed the Association, which replied through counsel that all the units had plumbing issues; it said that it did not have the funds to resolve them all.

Robinson-Huntley filed a complaint alleging, among other things, that the Provide and Pay Provision obligated the Association to replace the pipes. While the complaint was pending, the Association adopted an amendment ("the Conflict Provision") to its bylaws providing that they would control in the event of any conflict between them and a member's mutual ownership contract. It also adopted an amendment ("the Repair Provision") providing that

> units and other services and necessities
> shall be made available to the member . . .
> at their expense. The monthly fees . . .
> as determined by the Board of Directors[]
> shall be sufficient to enable the
> [Association] to meet as best as it can
> under the circumstances[] its taxes, pay
> fixed and operating expenses, and build up

2

necessary reserves including a general reserve for contingencies and special reserves to take care of repairs, maintenance, replacements, and vacancies, taking into consideration the long term plans of the [Association] and the current condition of the [u]nits.

Robinson-Huntley thereafter filed a second amended complaint in which she again alleged that the Provide and Pay Provision obligated the Association to replace the pipes. She also alleged that the Association withheld financial records from her and failed to conduct an audit required by the bylaws. She sought declaratory judgments that (1) she was entitled to the Association's financial records under Code § 55-474, (2) the Association was obligated under the Agreement to repair common areas, which included replacing the pipes, and (3) the Conflict Provision was invalid. She also sought injunctions to compel the Association to (1) perform an audit, (2) appoint a finance committee and prepare a budget, and (3) replace the pipes. She also sought an award of attorneys' fees under Code § 55-492(A).

The Association filed a demurrer, which the circuit court sustained as to Robinson-Huntley's claim for an injunction compelling the Association to perform an audit. Following a bench trial on the remaining claims, the court awarded Robinson-Huntley (1) an injunction requiring the Association to appoint a finance committee and prepare a budget and (2) a

3

declaratory judgment that the Conflict Provision was invalid. The court entered judgment for the Association on all remaining claims. It also declined to award attorneys' fees to either party.

We awarded Robinson-Huntley this appeal.

## II. ANALYSIS

### A. CONSTRUING THE CONTRACT

In her first assignment of error, Robinson-Huntley asserts that the circuit court erred by concluding that the Provide and Pay Provision did not obligate the Association to replace the pipes. She first argues that the Contract is unambiguous and clearly requires the Association to make the repair. She also argues in the alternative that, if the Contract is ambiguous, the ambiguity must be resolved against the Association, which drafted it.

These arguments present questions of both law and fact. "The question whether the language of a contract is ambiguous is a question of law which we review de novo." Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002). "Contract language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time. However, a contract is not ambiguous merely because the parties disagree as to the meaning

4

of the terms used." Id. at 632, 561 S.E.2d at 668 (internal citation, alteration, and quotation marks omitted).

"When an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself. However, when a contract is ambiguous, the Court will look to parol evidence in order to determine the intent of the parties." Id. at 632, 561 S.E.2d at 667-68 (citation omitted). The plaintiff then bears the burden of proving that the parties intended the meaning that results in a breach of contract by the defendant. Id. at 631, 561 S.E.2d at 667. Whether the plaintiff has met that burden is a question of fact, and "we will only reverse the finding of the trial court if it is plainly wrong or without evidence to support it." Id.

The obligation to "provide and pay for property including the [m]ember's dwelling" may be understood in more than one way. It may mean, as Robinson-Huntley argues, that the Association is required to replace the pipes because the proviso immediately following that language--"except that the [m]ember shall make minor interior repairs and provide all interior and decorating"--implies that other repairs are the responsibility of the Association. However, "provide and pay for" may also mean nothing more than that the Association must acquire title to property at its own expense, and thereafter make it available to its members for their use as dwellings.

5

While the Association's bylaws and articles of incorporation are incorporated into the Contract, neither they nor any other provision of the Contract sheds any light on this question. Accordingly, we conclude that the Contract is ambiguous. The ambiguity may be resolved by ascertaining the intent of the parties reflected in the extrinsic evidence adduced at trial. Eure, 263 Va. at 632, 561 S.E.2d at 667-68.

The evidence discloses that Robinson-Huntley's predecessor-in-interest also signed a mutual ownership contract, which included language similar to the Provide and Pay Provision. However, the two contracts differ in one significant respect: the corresponding provision in the older contract provides that "[t]he Association shall . . . provide and pay for all necessary current repairs, maintenance, and replacements of Project property including the [m]ember's dwelling, except that the [m]ember shall make minor interior repairs and provide all interior painting and decorating." (First and third emphases added.)

The circuit court found this difference compelling. The older contract included an explicit requirement to repair, maintain, and replace but the Association subsequently removed it from the Provide and Pay Provision. The omission of a term from a written contract evidences intent to exclude it. Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C., 269 Va.

6

315, 330, 609 S.E.2d 49, 56 (2005).  Accordingly, the evidence that the Association removed the obligation from the Provide and Pay Provision supports the circuit court's conclusion that the Association intended to be relieved from that obligation under the Contract.

Further, the acts of the parties in relation to a contract establish a practical construction of it.  Roanoke Ry. & Elec. Co. v. Virginian Ry. Co., 159 Va. 289, 293, 165 S.E. 398, 399, (1932).  "The practical construction of a contract by the parties themselves is entitled to great weight in determining its proper interpretation."  Coal Operators Cas. Co. v. C. L. Smith & Son Coal Co., 192 Va. 619, 626, 66 S.E.2d 521, 525 (1951).

The evidence establishes that the Association repaired the units' roofs and canopies in 2010, consistent with a practice of making repairs when a common problem affected several units and the funds were available to make the repairs for everyone who needed them.  By contrast, Robinson-Huntley was unable at trial to identify an example of the Association ever undertaking repairs similar to those she sought.

Taken together, this evidence of the change in the Provide and Pay Provision and the practical construction of the Contract by the parties supports the circuit court's finding that Robinson-Huntley failed to prove that they intended the

7

Association to make the repairs she sought.  Therefore, the court's finding is not plainly wrong or without evidence to support it and it will be affirmed.  Eure, 263 Va. 631, 561 S.E.2d at 667.[*]

## B.  ATTORNEYS' FEES

In her final assignment of error, Robinson-Huntley asserts that the circuit court erred by declining to award her attorneys' fees under Code § 55-492(A).  She argues that the court incorrectly ruled that she was not adversely affected by the Conflict Provision, under which the bylaws would prevail if any conflict existed between them and the Contract.  If she had not succeeded in challenging the Conflict Provision, she continues, the Association would have been empowered to modify the Contract unilaterally by amending the bylaws to create such a conflict.

---

[*] We have often applied the rule that Robinson-Huntley advocates in this case, that an ambiguous contract is to be construed against the drafter.  E.g., Doctors Co. v. Women's Healthcare Assocs., 285 Va. 566, 573, 740 S.E.2d 523, 526 (2013) (citing cases).  While the rule assists courts in resolving ambiguities where there is no extrinsic evidence of the parties' intent or where such evidence is in equipoise, this is not such a case and we will not apply the rule here. See Boulware v. Newton, 59 Va. (18 Gratt.) 708, 721 (1868) (declining to apply the rule where other rules of construction resolved the question); cf. Charles E. Russell Co. v. Carroll, 194 Va. 699, 701-02, 74 S.E.2d 685, 687 (1953) (stating "this rule of construction is not favored by the courts").

8

The question of whether a party is adversely affected by a failure to comply with a real estate cooperative's bylaws has nothing to with the question of whether the party may be awarded attorneys' fees under Code § 55-492(A). The statute states that

> If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration of bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. Punitive damages may be awarded for a willful failure to comply with this chapter. The court, in an appropriate case, may award reasonable attorney's fees.

Code § 55-492(A).

Robinson-Huntley argues that the term "adversely affected" as used in the statute is intended to require the plaintiff in any such action to have standing to sue. She analogizes to Code § 15.2-2314, which permits "[a]ny person aggrieved by any decision of [a] board of zoning appeals" to file a petition for certiorari to obtain appellate review of that decision by the appropriate circuit court.

We need not address this argument because whatever the term "adversely affected" may mean in Code § 55-492(A), it is not relevant to an award of attorneys' fees. The language providing for an award of attorneys' fees follows two sentences

9

after the term "adversely affected."  The decision whether to award attorneys' fees is based not on whether the plaintiff is "adversely affected" but on whether the case is "appropriate." We review that determination for abuse of discretion.

The "three principal ways" by which a court may abuse its discretion occur "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."  Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (quoting Kern v. TXO Production Corp., 738 F.2d 968, 970 (8th Cir. 1984)).

The circuit court observed that "I don't believe under [Code § 55-492(A)] that [Robinson-Huntley] has prevailed in terms of showing adversity in this instance."  As noted above, that is not a proper factor for the court's consideration of awarding attorneys' fees under the statute.  However, while Robinson-Huntley asserts the court erred by concluding that there was no adversity, she does not assign error to the court's reliance on this improper factor in reaching its decision.  We therefore will not reverse it.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>