FIRST DIVISION

May 16, 2005

No. 1-03-3703

LENNY SZAREK, INC., ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. ) No. 02 L 03505    )

MARYLAND CASUALTY COMPANY, ) Honorable

) Bernetta Bush, 

Defendant-Appellee. 
 ) Judge Presiding.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Lenny Szarek, Inc. (Szarek) appeals the grant of summary judgment to defendant Maryland Casualty Company (Maryland) on its counterclaim for declaratory judgment.  Szarek contends the circuit court erred in concluding that the territoriality provisions of Maryland's insurance policy precluded coverage for a worker's compensation claim filed in Illinois and that the lack of coverage was clear to the point that Maryland was not even required to provide a defense against such a claim.  We agree with Szarek and reverse.

FACTUAL BACKGROUND

Szarek's and Maryland's pleadings reveal the following undisputed facts.

Szarek is a carpentry contractor and an Illinois corporation, headquartered in McHenry County.  We take notice that McHenry is one of Illinois' northernmost counties, sharing a border with the State of Wisconsin.  Szarek does business in both Illinois and Wisconsin.  

On June 23, 1994, Maryland issued a policy of worker's compensation insurance to Szarek, with coverage retroactive to May 23, 1994, and continuing through June 23, 1995.  Maryland's policy provided:  "We will pay promptly when due the benefits required of you by the workers compensation law."  The policy defined "workers compensation law" as follows:  "Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in item 3.A. of the Information Page."  Only one state was listed in item 3.A. of the information page: Wisconsin.  

Szarek also entered into a separate employer's liability pooling agreement, a form of self-insurance, covering the same period of time as the Maryland policy.  The agreement also provided that workers' compensation benefits would be paid "when due the benefits required of you by the workers' compensation law."  However, the agreement defined "the workers' compensation law" as "the workers' or workmen's compensation law and occupational disease law of Illinois."  The agreement appointed Management Services, Inc. (also known as Risk Management Association, and hereinafter referred to as RMA) as its administrator. 

On November 7, 1994, Thomas Cholewinski, a Szarek employee, was hurt while working in Kenosha, Wisconsin.  Cholewinski was an Illinois resident and filed his worker's compensation claim in Illinois.  Szarek tendered this claim to RMA.  RMA, unaware of the existence of the Maryland policy at the time, began to pay benefits and incur expenses on the claim in the amount of $33,412.80.

When RMA became aware of the Maryland policy, it tendered the claim to Maryland on January 19, 1996, for ongoing administration, and sought compensation for the benefits it had paid and the costs of administration it had incurred.  Maryland, however, denied any liability for Cholewinski's claim on March 8, 1996, explaining it would "not be able to provide benefits on *** [the] claim under *** [its] workers' compensation policy issued for the State of Wisconsin."  Cholewinski subsequently filed for an adjustment of his claim before the Illinois Industrial Commission, naming Szarek and Maryland as defendants.  Maryland did not participate in the proceeding, however, and the final settlement of $22,980.75, reached on April 15, 1997, was paid out of the self-insurance pool.  All told, Szarek, through its contributions to the self-insurance pool, paid $69,316.01 for benefits to Cholewinski and for defense against his claim.  

Litigation over Maryland's denial of coverage commenced in the law division of the circuit court of Cook County sometime in 1999,
(footnote: 1) originally between RMA and Maryland, but later between Szarek and Maryland in the chancery division.
(footnote: 2)  Szarek's complaint alleged that Cholewinski's claim was covered under the Maryland policy, that Maryland had wrongfully failed to defend and indemnify Szarek for the claim, and that, as a result, Szarek paid for the costs of defense and workers' compensation benefits itself.  In its answer to the complaint, Maryland denied that Cholewinski's claim fell within the terms of the policy and therefore denied that it owed a defense and indemnification of his claim.  Maryland also filed a counterclaim the same day it filed its answer, seeking a declaration from the circuit court that it had no duty to defend or indemnify Szarek against Cholewinski's claim.  Maryland conceded that Cholewinski had a valid claim under either Wisconsin or Illinois law, but nevertheless contended that its policy only covered claims brought in Wisconsin.  

On June 30, 2003, Szarek moved the chancery court for summary judgment on its complaint.  In response, Maryland cross-motioned for summary judgment on its counterclaim.  In its motion, Szarek contended that benefits were due under Wisconsin worker's compensation law once Cholewinski was injured in Wisconsin, and therefore Maryland owed coverage.  Maryland, on the other hand, argued that the plain language of its policy limited coverage to claims filed in Wisconsin.  The chancery court denied Szarek's motion and granted Maryland's motion, stating "the Maryland worker's compensation coverage *** [does] not apply to the Illinois worker's compensation claim *** As a result, Maryland had no obligation to defend Szarek; no obligation to indemnify Szarek and no obligation to make payments to Szarek ***."  Szarek appeals.  

II.  ANALYSIS

The law is clear that summary judgment should be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and the moving "party is entitled to judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2002).  In this case, the parties present no factual disputes and instead argue over the legal question
 of the construction of an insurance policy.  We review 
de
 
novo
 both the construction of insurance contracts (
State Farm Mutual Automobile Insurance Co. v. Villicana
, 181 Ill. 2d 436, 441, 
692 N.E.2d 1196, 1199
 (1998)), as well as grants of summary judgment (
Espinoza v. Elgin, Joliet & Eastern Ry. Co
., 165 Ill. 2d 107, 113, 
649 N.E.2d 1323
, 1326
 (1995)
).   

"To ascertain the meaning of *** [an insurance] policy's words *** [a] court must construe the policy as a whole ***."  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108, 
607 N.E.2d 1204, 1212
 (1992).  Unambiguous terms of a policy will be applied as written, unless those terms violate public policy.  
Villicana
, 181 Ill. 2d at 442, 
692 N.E.2d at 1199
.  Ambiguities in terms limiting or excluding coverage, however, will be construed against the insurer and in favor of the insured.  
Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.
,  
347 Ill. App. 3d 411
, 414, 806 N.E.2d 1224, 1227 (2004).  A term is ambiguous when
 it is subject to more than one reasonable interpretation.
 
Outboard Marine Corp.
, 154 Ill. 2d at 108,
 607 N.E.2d at 1212
.    
 

On appeal, Maryland contends that under the language of the policy it is only liable for defense and indemnification of worker's compensation claims as "required" by Wisconsin's worker's compensation act, which it contends means that the claim must be filed in Wisconsin.  Szarek, on the other hand, argues that "as required" under Wisconsin's worker's compensation law means that a claim should be evaluated and paid under Wisconsin law regardless of where the claim is filed.  Szarek therefore sees the provision not as limiting coverage to claims brought in a particular forum, but rather as a choice of law provision limiting benefits to what would have been granted under the state law specified in the policy.  Szarek further contends that the law required Maryland to include an express exclusion in the policy for claims filed outside of Wisconsin, if that was Maryland's desired limitation of coverage, and that public policy demands the negation of provisions limiting the territorial reach of worker's compensation coverage.
(footnote: 3)     

These issues, considered under virtually identical policy provisions as that at issue in this case, have produced two divergent lines of decisions.  One line of cases agrees with Szarek that alleged territorial limitation provisions are in fact choice of law provisions, not limiting coverage based on where the employee chooses to file his claim, but only to restrict benefit eligibility and to set indemnification limits based on the state law specified in the policy .  This line of cases includes 
Smith & Chambers Salvage v. Insurance Management Corp.
, 808 F. Supp. 1492 (E.D. Wash. 1992); 
Sieman v. Postorino Sandblasting & Painting Co.
, 111 Mich. App. 710, 314 N.W.2d 736 (1981); 
American Mutual Insurance Co. v. Duvall
, 117 N.H. 221, 372 A.2d 263 (1977); 
Toebe v. Employers Mutual of Wausau
, 114 N.J. Super. 39, 274 A.2d 820 (App. Div. 1971); 
Kacur v. Employers Mutual Casualty Co.
, 253 Md. 500, 254 A.2d 156 (1969); and 
Weinberg v. State Workmen's Insurance Fund
, 368 Pa. 76, 81 A.2d 906 (1951). 
 The other line of cases agrees with Maryland that, for there to be coverage, the claim must actually be filed in the state whose law is made to apply in defining the term "worker's compensation law."  This line of cases includes 
Travelers Insurance Co. v. Industrial Accident Comm'n
, 240 Cal. App. 2d 804, 809-10, 50 Cal. Rptr. 114, 118-19 (1966); 
Lumber Transport, Inc. v. International Indemnity Co
., 203 Ga. App. 588, 590, 417 S.E.2d 365, 366-67 (1992); 
Foster Wheeler Corp. v. Bennett
, 354 P.2d 764, 768 (Okla. 1960); 
Consolidated Underwriters v. King
, 160 Tex. 18, 20, 325 S.W.2d 127, 129 (1959); 
Rood v. Nelson
, 14 Misc. 859, __,178 N.Y.S.2d 969, 971 (1958); 
Jones v. Hennessey
, 232 La. 786, 793, 95 So.2d 312, 314 (1957); 
Mandle v. Kelly
, 229 Miss. 327, 345, 90 So. 2d 645, 649-50 (1956); and 
Miller Brothers Construction Co. v. Maryland Casualty Co
., 113 Conn. 504, 519-20, 155 A. 709, 714-15 (1931).  We perceive the more enlightened view to be reflected in those cases that find the plain meaning of policies providing that benefits will be paid "as required" under a specified state's worker's compensation law to only be  a choice of law provision, and therefore find that Maryland must indemnify Szarek for the benefits paid to Cholewinski and for the costs of defense against his claim.  As a result of this conclusion, we need not address Szarek's claim that Maryland breached its duty to defend.

We find the Pennsylvania Supreme Court's decision in 
Weinberg
 instructive.  Mrs. Gotkin, the employee in 
Weinberg
, was injured in Pennsylvania, but filed a worker's compensation claim in her home state of New Jersey.  The  State Workmen's Insurance Fund, under which the plaintiff, a Pennsylvania business, was covered, provided that the Fund agreed to "assume the whole 
liability
 of this Insured Employer under the Workmen's Compensation Act of Pennsylvania."  (Emphasis in the origninal.)  
Weinberg
, 368 Pa. at 80, 81 A.2d at 908.  The policy further provided that its liability for judgments was "confined to the liability arising under the Workmen's Compensation Law, and not otherwise."  
Weinberg
, 368 Pa. at 80, 81 A.2d at 908.  The 
Weinberg
 court rejected the Fund's claim that the policy language rendered it liable only for claims filed in Pennsylvania, stating that that view "confuse[d] the Fund's liability for the payment of compensation due because of the injury to the employee, and its liability for the payment of a judgment obtained by the employee in an action to enforce payment of compensation."  
Weinberg
, 368 Pa. at 80; 81 A.2d at 908.  The court explained that at the moment Gotkin was injured she became eligible for Pennsylvania benefits, simultaneously making the employer liable to pay compensation under the Pennsylvania Act.  
Weinberg
, 368 Pa. at 81; 81 A.2d at 908-09.  Based on that consideration, the court found Gotkin's subsequent, fortuitous choice to file her claim in New Jersey did not impact the employer's liability under the Pennsylvania act.  
Weinberg
, 368 Pa. at 81; 81 A.2d at 909.  The court therefore concluded that under the Fund's policy, the Fund was liable to assume the defense and indemnification of Gotkin's claim, but only as would have been granted under the Pennsylvania Act, even allowing the complete denial of compensation if the injury would not have been covered under Pennsylvania law.  
Weinberg
, 368 Pa. at 81; 81 A.2d at 909; accord 
Kacur
, 253 Md. at 509-10; 254 A.2d at 161-62. 

In 
Kacur
, the employer was a Maryland resident also doing business in Pennsylvania.  The employee was injured in Maryland and filed his worker's compensation claim there.  The insurer had promised "to pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law," and specified that the coverage "applie[d] to the Workmen's Compensation Law *** of each of the following states: PENNSYLVANIA."  
Kacur
, 253 Md. at 502, n. 1, 254 A.2d at 157, n. 1.  The 
Kacur
 court observed that a "contract of insurance coverage between the employer and his carrier[,] may *** be sufficiently broad as to cover the employer in all situations coextensive with the options open to the injured employee under applicable Workmen's Compensation Acts," so long as an insurer is only required to indemnify its insured for the amount allowed under the law of the state specified in the policy.  
Kacur
, 253 Md. at 504-05, 254 A.2d at 158.  
Kacur
 criticized the holding of 
Consolidated Underwriters v. King
, a Texas appellate court decision concluding that a similar provision restricted coverage to claims actually filed in a particular forum, which in that case was Louisiana.  The 
Kacur
 court noted Professor Larson's view that the provision in 
King
 merely served as a choice of law, not a coverage provision.  
Kacur
, 253 Md. at 509, 254 A.2d at 161; see 9 A. Larson Workers' Compensation Law §151.04 at 151-12 (2000) (current edition: "the employer plainly intended to accept compensation liability for all its employees working in the area where decedent worked [Texas].  The repeated references to Louisiana in the policy all are attempts to state what law shall govern").  As in 
Weinberg
, the court ordered that the insurer indemnify the employer, but only for benefits which would have been allowed under the law of the state specified in the policy.  
Kacur
, 253 Md. at 510, 254 A.2d at 161-62; see also 
Toebe
, 114 N.J. Super. at 50, 274 A.2d at 826 (rejecting an insurer's argument that 
Weinberg
 and 
Kacur
 should not be applied because they "would allow a *** court to determine what a *** [foreign] administrative agency *** would award as compensation[,] *** [as the] same argument could be made in any conflict of laws case where the court of the forum, in addition to determining the applicable law of another jurisdiction, must also fix damages").           

We agree with these courts and hold that the substantially identical language of the Maryland policy should be construed as setting forth only a choice of law provision to be applied regardless of where the claim is filed, and only restricting benefits to the extent that they are payable under Wisconsin law, not restricting coverage to claims filed in Wisconsin.  This approach is consistent with the general principle previously noted that where the language of an insurance policy is capable of more than one interpretation it should be construed against the insurer and in favor of coverage.  
Outboard Marine Corp
., 154 Ill. 2d at 108, 
607 N.E.2d at 1212
; 
Progressive Universal Insurance Co
.,  
347 Ill. App. 3d at
 414, 806 N.E.2d at 1227.  This approach further comports with the well established principle that "'if an insurer does not intend to insure against a risk which is likely to be inherent in the business of the insured, it should specifically exclude such risk from the coverage of the policy,'"
 which Maryland could easily enough have done.  
University of Illinois v. Continental Casualty Co
., 234 Ill. App. 3d 340, 351, 599 N.E.2d 1338, 1346 (1992), quoting 
Bremen State Bank v. Hartford Accident & Indemnity Co
, 427 F.2d 425, 427 (7th
 Cir. 1970); accord 
Sieman v. Postorino Sandblasting & Painting Co
., 111 Mich. App. at 718, 314 N.W.2d at 740 ("[the insurer] could have written into the policy an express exclusion of coverage under even the law of Wisconsin for cases where an employee proceeds in the Michigan compensation system").  Finally, this approach also avoids having an employer's coverage rest totally on the whim of the employee in his choice of the forum state in which to process the claim.  See 
Duvall
, 117 N.H. at 226, 372 A.2d at 266 ("[t]hat [the employee,] for reasons of his own, chose to file in New Hampshire[,] is a happenstance which is irrelevant to the question of [the insurer's] liability"); 
Weinberg
, 368 Pa. at 82, 81 A.2d at 909 ("[w]e do not think it can be fairly inferred from the terms of the policy, or that the parties thereto could have contemplated, that the  [insurer] assumed the obligation to save plaintiffs harmless only in case the injured employee instituted proceedings to recover compensation in [the state specified as providing the worker's compensation law in the plan] and not if, for some purpose of her own, she chose to proceed *** in some other jurisdiction"). 

Maryland, however, argues that the appellant's contentions ignore the Illinois case of 
Ohio Casualty Co. v. Southwell
, 284 Ill. App. 3d 1019, 673 N.E.2d 404 (1996)
.  But we fail to see the applicability of that case to the situation here.  In our view, the 
Southwell
 court never sought or claimed to apply Illinois' substantive law in construing the language of the policy.  Rather, it felt compelled to apply California substantive law under Illinois' internal conflict of law rules.  
Southwell
 held that because all the significant contacts with respect to the policy occurred in California, California law controlled the interpretation of the provisions of the policy.  
Southwell
 concluded that California substantive law must control because California was the domicile of the insured, its employee, and was where the insurance policy was negotiated and delivered.  Concluding that the interpretation of that provision was articulated in the California case of 
Travelers
, 
Southwell
 held: "
Pursuant to California law
, Ohio Casualty [the insurer] cannot be held liable for Southwell's Illinois workers' compensation claim because the Ohio policy exclusively covers liability for injury under the workers' compensation laws of California."  (Emphasis added.) 
Southwell
, 284 Ill. App. 3d at 1024, 673 N.E.2d at 408.  

Thus, as Szarek contends, the result in 
Southwell
 hinged exclusively on the resolution of a choice of law question, the answer to which mandated that California law be used to interpret any and all provisions in the policy.  The fact that the 
Southwell
 court concluded that California's interpretation would not violate Illinois' public policy (
Southwell
, 284 Ill. App. 3d at 1023-24, 673 N.E.2d at 406-08) only means that California's interpretation did not offend our constitution or any 
existing
 statutes or precedents (
American Federation of State, County & Municipal Employees v. State of Illinois
, 124 Ill. 2d 246, 260, 
529 N.E.2d 534, 540
 (1988)), which in no way denotes that it determined that Illinois courts, free to consider the meaning of the provision as a matter of first impression under Illinois law, should follow California's lead.  See 
General Casualty Co. v. Carroll Tiling Service, Inc.
, 342 Ill. App. 3d 883, 896, 796 N.E.2d 702, 712 (2003) (concluding that 
Southwell
, resolved by the choice of law determination, was of no significance in interpreting Illinois law).

Finally, Maryland would not have us reach our coverage conclusion by asserting that the cases on which we rely
 are all premised on the employer being left uninsured in the event the court did not impose coverage on the insurer.  See generally 
Weinberg
, 368 Pa. 76, 81 A.2d 906; 
Kacur
,  253 Md. 500, 254 A.2d 156.  As Maryland puts it, "[e]ach case *** stands for the proposition that where an employer would be left uninsured by a contrary holding, public policy will expand a workers compensation policy to cover a claim brought in a non-covered state ***.  No similar situation exists here, since SZAREK is insured through RMA for the claim filed under Illinois law."  In support of that contention, Maryland cites to language from 
Duvall
, where the court said:  "Had the [employer] desired coverage under the law of New Hampshire it could have obtained such protection through the payment of the additional premium."  
Duvall
, 117 N.H. at 227-28, 372 A.2d at 267.  We are unpersuaded.  It is the specific provisions of the policy that must control, not the availability of other coverage.  Moreover, we find Maryland's attempted use of 
Duvall
 to be disingenuous.  The 
Duvall
 court made its quoted statement, not in response to an employer's claim that it should provide benefits under the policy, but in opposition to the employer's argument that it should indemnify beyond the benefit limits provided under the worker's compensation law of the state specified in the policy.  The 
Duvall
 court still held that the insurer was required to indemnify the employer up to the benefit limit under the worker's compensation law of the state specified in the policy, even though the employee filed in his claim in a different state.  
Duvall
, 117 N.H. at 226-27, 372 A.2d at 266-67.

For all the foregoing reasons, we reverse the judgment of the circuit court and remand for a determination as to whether Cholewinski's injuries would have been compensable under Wisconsin's worker's compensation act.  Should the circuit court find that claim eligible for compensation under Wisconsin law, judgment should be entered for Szarek and damages computed based on the benefits schedule of the Wisconsin's worker's compensation act (
Toebe
, 114 N.J. Super. at 50, 274 A.2d at 826 (holding courts may determine what compensation would be awarded by a foreign administrative agency)).  Finally, if determined by the trial court to be appropriate, the damages may be divided between RMA and Maryland based on established principles of equitable contribution between insurers with overlapping coverage.  See 
Progressive Insurance Co. v. Universal Casualty Co
., 347 Ill. App. 3d 10, 19, 599 N.E.2d at 585 (2004).
(footnote: 4)
 Reversed and remanded with instructions.

O'MALLEY and McNULTY, J.J., concur.

FOOTNOTES
1:  The first complaint has not been included in the record so we cannot specify the date.

2:  The procedural history surrounding RMA's complaint, the transition from RMA to Szarek as named plaintiff, and the switch between divisions in the circuit court, are unimportant for purposes of this appeal.

3:
Maryland also contends, in a footnote, without citation to authority, that "it is questionable whether Szarek even has standing to pursue the action it has brought against Maryland" based on a provision in the agreement in which RMA claims the rights of the insured for purposes of recouping their "payments from anyone liable for the injury."  Initially, we note that Maryland has waived this issue by not timely raising it in the trial court.  
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 508, 
524 N.E.2d 561, 582
 (1988) ("
lack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court"
).    Further, we need not consider arguments that are not supported by authority.  
Consolidated Freightways Corp. v. Human Rights Comm'n
, 305 Ill. App. 3d 934, 940, 713 N.E.2d 148, 152 (1999).

4:
In a petition for rehearing on this question, Szarek contends that, since Maryland breached its duty to defend against Cholewinski's worker's compensation claim, it is not entitled to equitable contribution under the canon that an insurer is estopped from asserting policy defenses and taking advantage of provisions of a contract it has already substantially breached.  See 
Progressive Insurance Co.
, 347 Ill. App. 3d at 22, 807 N.E.2d at 587; 
Sims v. Illinois National Casualty Co. of Springfield
, 43 Ill. App. 2d 184, 197, 193 N.E.2d 123, 129 (1963).  Szarek further argues that equitable contribution cannot apply because there is no duplicate coverage between RMA and Maryland, contending that its self-insured policy covered only injuries occurring in Illinois while the Maryland policy covered only injuries occurring in Wisconsin.   We would disagree as to both contentions.  As to the first, "an action [in equitable contribution] is based in equity and does not depend upon the contractual rights of the insured."  
Progressive Insurance Co.
, 347 Ill. App. 3d at 19, 807 N.E.2d at 585.  See also 
Fireman's Fund Insurance Co. v. Maryland Casualty Co.
, 65 Cal. App. 4th 1279, 1296, 77 Cal. Rptr. 2d 296, 305 (1998) ("contribution permits liability for the loss to be allocated among *** various insurers without regard to questions of comparative fault or the relative equities between *** insurers").  Further, in arguing its second contention, Szarek now appears to adopt the territorial limitation approach with respect to its own insurance, as opposed to the choice of law approach it previously advocated with respect to Maryland and which we adopted pursuant to 
Kacur
, 
Weinberg
, and 
Toebe
 as discussed above.