**Supreme Court**
No. 2014-55-M.P.
No. 2014-56-M.P.
No. 2014-58-M.P.

Ajax Construction Company, Inc.   :

     v.        :

Liberty Mutual Insurance Company et al.  :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.** Ajax Construction Company (Ajax) and Beacon Mutual Insurance Company (Beacon) are before this Court on consolidated writs of certiorari from a decree of the Appellate Division of the Workers' Compensation Court (the Appellate Division), in favor of Liberty Mutual Insurance Company (Liberty).[1] The Appellate Division vacated a prior decree of a judge of the Workers' Compensation Court and entered a new decree ordering Beacon to pay workers' compensation benefits to an injured Ajax employee and to reimburse Liberty for any benefits paid to Beacon by Liberty under the prior decree. For the reasons set forth in this opinion, we quash the Appellate Division's decree.

## I

## Facts and Travel

The facts are largely undisputed. On October 26, 2004, an Ajax employee, Mark Furia, was injured while working as an iron worker on a job site in Milton, Massachusetts. Following his injury, Furia filed a petition against Ajax in the Rhode Island Workers' Compensation Court.

---

[1] Ajax filed two petitions for certiorari in this case (No. 2014-55-M.P., No. 2014-58-M.P.) and Beacon filed one (No. 2014-56-M.P.). By an order dated October 27, 2015, this Court consolidated the three cases.

Shortly thereafter, on November 18, 2004, Ajax petitioned the Rhode Island Workers' Compensation Court, pursuant to § 28-35-12 and G.L. 1956 § 28-30-13, to determine which insurer (Beacon or Liberty) was obligated to pay Furia's claim. On December 22, 2004, a judge of that court entered a pretrial order with respect to Furia's petition that held that Furia sustained a work-related injury that resulted in total incapacity. That same day, the judge also entered an interlocutory order on Ajax's petition that required Beacon to pay benefits to Furia, pursuant to G.L. 1956 § 28-35-12(b)(1). The interlocutory order also stated that, if Beacon was found liable after trial, it would be entitled to receive a credit for all payments that it made to Furia; and, if Liberty was found liable, it would be ordered to reimburse Beacon for all payments that Beacon made to him. The same judge who entered the abovementioned orders conducted the trial on Ajax's petition on July 11, 2005, September 8, 2005, and May 11, 2006.

Donald Morel, Ajax's president, was the only witness to testify. He stated that Ajax was located in Harrisville, Rhode Island, but he added that it did business in Connecticut, Massachusetts, New Hampshire, New York, and Rhode Island. He testified that Ajax's insurance agent, Christopher & Regan Insurance Inc., handled all of Ajax's insurance. Morel stated that Ajax carried workers' compensation insurance in every state that it worked in, which included insurance with Liberty in Massachusetts and Beacon in Rhode Island. Morel discussed the calculation of each insurer's premium and explained that "[a]ny wages that were worked in Massachusetts on any Massachusetts job would be reported to Liberty like every other state. Whatever wages are worked on those jobs get reported to that insurance company, and our tax returns are used as back up for the wages." The Liberty policy's annual premium for workers' compensation coverage was $282,707, and the Beacon policy's annual premium was approximately $69,000.

In his testimony, Morel discussed Furia, who had been employed with Ajax for between fifteen and twenty years. He stated that Furia was injured while working in Milton, Massachusetts.[2] Morel explained that the particular job site where Furia was working when he was injured was not his sole place of employment, as Ajax moved iron workers to other job sites periodically.

Morel testified that, after Furia's injury, a Liberty representative called him and inquired as to where Furia had been hired and where he worked. Morel stated that he told the representative that he was unsure, but that Furia was likely hired at Ajax's Rhode Island office. He said that he was uncertain because, at the time of his hire, Ajax was not located at its present office and did much of its hiring at the job sites.

Morel was asked about his response to the Liberty representative who, during the phone call, inquired about the amount of work Ajax performed in Massachusetts and in Rhode Island. Morel testified that he may have told the representative that Ajax performed about 50 percent of its work in Massachusetts and 50 percent in Rhode Island, although he did not recall saying that to the representative. He stated that, at times, Ajax could have performed more work in Rhode Island; historically, however, 80 percent of Ajax's work had been in Massachusetts. Morel testified that for any given year, Ajax was unsure of where it would perform the majority of its work. In the year of Furia's injury, however, Ajax did more work in Massachusetts than Rhode Island. Morel also noted that, for employees who worked in Massachusetts, Ajax withheld Massachusetts income taxes and paid Massachusetts unemployment taxes. He said that his next contact with Liberty after the phone call was a letter from Liberty denying coverage for the

---

[2] Morel noted that Furia had since returned to work at Ajax.

claim. Morel stated that he did not personally discuss Furia's claim with a Beacon representative.

The parties also introduced various documents into evidence, including the deposition transcripts of Furia and Jessica Reardon, a Liberty case manager. In Furia's March 3, 2005 deposition, he stated that he was hired at the Ajax headquarters in Rhode Island and had worked for Ajax as an ironworker for twelve to fifteen years. Furia stated that, since his hire, he had worked in Connecticut, Massachusetts, and Rhode Island. When asked what percentage of work he did in Massachusetts compared to Rhode Island, Furia responded "70/30." Furia was asked whether Massachusetts or Rhode Island taxes were deducted from his Ajax paychecks, to which he replied, "Both, I believe."

Furia stated that, after his injury, his wife brought him to Kent Hospital, and he was later transferred to Rhode Island Hospital. He recalled a visit from a Liberty representative, Don Friar, while in the hospital. Friar told Furia that his claim was a "no-brainer" Rhode Island workers' compensation case because Furia lived in and was hired in Rhode Island. Furia stated that Friar, before leaving, handed him a business card for a Rhode Island workers' compensation attorney and told him to contact the attorney.

In Reardon's deposition, she stated that she was, at that time, assigned to handle Furia's claim, but she noted that another adjuster, Ellen Cunningham, previously handled it. Reardon was unsure whether Liberty sent a representative to speak with Furia in the hospital. She was also asked about various case notes on Furia's claim file, including a note that said, "Claim is Rhode Island jurisdiction based on PWALSH." Reardon explained that "PWALSH" was an acronym for a test that Liberty used to determine a claim's jurisdiction; she said that it stood for

"[p]aid, works, accident, lives, supervised, hired." Reardon testified that Cunningham performed the PWALSH test for Furia's claim and denied it on jurisdictional grounds.

On May 11, 2006, the trial judge issued a bench decision. In it, he discussed G.L. 1956 § 28-36-5, which states, in pertinent part, "Every policy shall cover the entire liability of the employer under chapters 29 -- 38 of this title * * * ." He cited to an opinion of the Appellate Division of the Workers' Compensation Court, Flaxington v. Persona Management, W.C.C. No. 92-14565 (App. Div. 1995), for the proposition that an insurer violates § 28-36-5 if it insures an employer but excludes coverage of a particular class of employees. Thus, the trial judge rejected Beacon's argument that it had a right to limit the coverage it provided to various groups of employees by listing specific classes of covered employees in its policy. The trial judge stated that any attempts by Beacon to limit its coverage or exclude classes of employees from coverage were a nullity and, thus, did not exempt Beacon from liability.

The trial judge stated that Ajax was liable to Furia under the Rhode Island Workers' Compensation Act (the act) because Furia was hired in Rhode Island. He determined that Beacon was primarily liable to Furia because he brought his claim in Rhode Island and Beacon issued a policy to Ajax pursuant to the act. The trial judge stated, "I do believe that Mr. Furia has a right to expect payments from a single entity, and in this case, I have designated Beacon Mutual as that entity." He also found that Ajax had dual or overlapping coverage regarding this claim because Furia had a right to compensation under the workers' compensation laws of both Rhode Island and Massachusetts. Given the overlapping coverage, he determined that Liberty was required, under the policy it issued to Ajax, to share in Beacon's responsibility to pay Furia. As such, the trial judge held that Liberty must reimburse Beacon for 50 percent of the benefits that Beacon paid to Furia.

The trial judge stated that the act lacked a particular remedy that addressed the matter at hand. He noted, however, that workers' compensation law was "equitable in nature," so he fashioned a remedy that was "equitable and in accordance with the existing law." As such, the trial judge ordered that: Beacon provide workers' compensation benefits to Furia, Beacon receive a credit for all sums paid to Furia after the interlocutory order entered, and Liberty indemnify Beacon for 50 percent of the workers' compensation benefits paid to Furia.[3]

In May 2006, following the decree, Ajax, Beacon, and Liberty each appealed to the Appellate Division. On appeal, Ajax argued that the trial judge erred in assigning Liberty only 50 percent liability for the payment of Furia's benefits. It argued that Liberty should have been 100 percent liable for the payment of benefits because Ajax paid Liberty a premium exceeding $280,000 to provide workers' compensation coverage for its employees who worked in, and were injured in, Massachusetts.

Beacon argued that the Liberty policy covered Furia's claim. It further asserted that § 28-36-5 did not discharge Liberty from its obligation to pay benefits to Furia. Beacon also contended that Liberty engaged in unfair-claim-settlement practices in violation of G.L. 1956 § 27-9.1-4 and breached its fiduciary duty owed to Ajax because "it undertook to deny a legitimate Massachusetts claim without considering the impact their denial would have on its other coverage and potential premium effect."

Liberty argued that the trial judge erred in ordering it to indemnify Beacon for 50 percent of the benefits paid to Furia. It maintained that § 28-36-5 rendered Beacon responsible for covering Ajax's entire liability. Further, Liberty asserted that its policy only covered a "Massachusetts employee" and Furia was a Rhode Island employee.

---

[3] A decree encompassing the trial judge's order was entered on May 19, 2006.

On November 7, 2013, more than seven years after the parties appealed, Beacon moved for a decision from the Appellate Division pursuant to § 28-35-28.[4] By an order dated January 21, 2014, the Appellate Division vacated the trial judge's decree and ordered that Beacon be held fully responsible for paying workers' compensation benefits to Furia and to reimburse Liberty for any workers' compensation benefits it paid to Beacon under the prior decree.

In its written decision, the Appellate Division first noted that Furia was covered under the Rhode Island Workers Compensation Act, specifically G.L. 1956 § 28-29-1.3, which states that it "shall apply to any and all employees, as defined in § 28-29-2(4), who are injured or hired in the state of Rhode Island." The Appellate Division then addressed § 28-36-5 and its language that "[e]very policy shall cover the entire liability of the employer under chapters 29 -- 38 of this title * * * ." Relying on Professor Arthur Larson's treatise on workers' compensation, the Appellate Division determined that this language rendered Rhode Island's workers' compensation statute "in the category of 'full-coverage' statutes." The Appellate Division noted that "[a] majority of courts in states with such 'full-coverage' statutes have interpreted this language to mean that the insurance policy is deemed to cover all employees of the insured in all occupations and all businesses." Thus, the court found Beacon liable under § 28-36-5 for all of the benefits awarded to Furia because: (1) Beacon issued Ajax an insurance policy to cover its liability to its employees under the act; (2) Furia filed a claim in Rhode Island under the act; and (3) Furia was awarded workers' compensation benefits pursuant to the act.

The Appellate Division then addressed Ajax and Beacon's argument that Liberty should pay Furia's claim because it collected significantly more of its premium based on the payroll of construction workers, like Furia. It rejected this argument, however, noting that "the Rhode

---

[4] We have found no explanation in the record for this inordinate delay, the length of which is concerning.

Island statute dictates the outcome in this case and places no weight on which insurer included the injured worker's wages in their premium in determining which insurer is responsible."

The Appellate Division agreed with the trial judge that both Massachusetts and Rhode Island had concurrent jurisdiction over Furia's claim because the Rhode Island Workers' Compensation Act applied to employees hired in Rhode Island, like Furia, and the Massachusetts Workers' Compensation Act applied to employees injured in Massachusetts, also like Furia. The court concluded that Liberty, under its policy's terms, would have been responsible for paying benefits to Furia if he filed his claim in Massachusetts.

The court noted that both the Liberty and the Beacon policies contained nearly identical provisions concerning the payment of benefits awarded in another state. Liberty's policy provision entitled, "Massachusetts Limited Other States Insurance Endorsement" stated: "1. We will pay promptly, when due, the benefits required of you by the workers' compensation law of any state other than Massachusetts, but only if the claim for such benefits involves work performed by a Massachusetts employee * * * ."

Because the Liberty policy did not define "Massachusetts employee" as used in the endorsement, the Appellate Division looked to a bulletin issued by the Massachusetts Workers' Compensation Rating and Inspection Bureau (WCRIB). The WCRIB was tasked with administering the assigned risk pool in Massachusetts, through which Ajax obtained the Liberty policy. The WCRIB bulletin defined "Massachusetts employees" as "individuals who are hired in Massachusetts to work primarily in Massachusetts, but who are temporarily working in another state in furtherance of their Massachusetts employers." Based on this definition, the Appellate Division determined that Liberty was required "to pay benefits awarded in another state to an employee who was hired in Massachusetts by a Massachusetts employer and was

injured while working temporarily in that other state." Because Furia was not hired in Massachusetts by a Massachusetts employer, the Appellate Division concluded that he was not a "Massachusetts employee" and, thus, Liberty was not responsible for paying benefits awarded to him in another state.

The Appellate Division rejected Beacon's contention that Liberty acted in bad faith, because the Unfair Claims Settlement Practices Act stated that it was "not intended to cover claims involving workers' compensation." Section 27-9.1-1.[5] It deemed Beacon solely responsible for paying Furia's benefits under the Act. Accordingly, the Appellate Division denied Ajax's and Beacon's appeals and granted Liberty's appeal. The court entered a new decree vacating the trial judge's decree and ordering Beacon to: pay workers' compensation benefits to Furia on behalf of Ajax; take a credit for all payments made to Furia up to that point; and reimburse Liberty for any workers' compensation benefits paid to it under the terms of the trial judge's decree.

Ajax and Beacon filed petitions for certiorari, which this Court granted. Before us, Ajax argues that the Appellate Division erred in: (1) finding Beacon solely responsible for the payment of Furia's benefits; (2) concluding that the Liberty policy did not cover the benefits awarded to Furia under the act; and (3) not determining that equity rendered Liberty liable to cover the claim.

Beacon asserts that the Appellate Division erred in: (1) allowing the location where Furia filed his claim to determine Liberty's liability under the policy; (2) not interpreting the Liberty

---

[5] We acknowledge and reproach some of Liberty's behavior, most notably, the fact that a Liberty representative visited a hospitalized Furia, told him that his case was a Rhode Island workers' compensation case, and gave him a Rhode Island workers' compensation attorney's business card. Neither party, however, pressed this issue on appeal, and thus, beyond expressing our displeasure, we need not address it further.

policy in a light most favorable to its insured, Ajax; (3) interpreting § 28-36-5 as requiring Beacon to provide coverage over all benefits awarded to Ajax employees who file a claim for benefits under the act; and (4) holding Beacon responsible for the payment of Furia's benefits, although the parties had stipulated that Liberty set its premium based on Furia's Massachusetts wages. Lastly, Liberty argues that Beacon contravened the act by defining "Rhode Island Employee" in its policy more narrowly than the act defined it.[6]

## II

## Standard of Review

"Upon a petition for certiorari, we review a decree of the Appellate Division for any error of law or equity pursuant to * * * § 28-35-30." Ellis v. Verizon New England, Inc., 63 A.3d 510, 513 (R.I. 2013) (quoting Mumma v. Cumberland Farms, Inc., 965 A.2d 437, 441 (R.I. 2009)). This Court's review is limited "to examining the record to determine if an error of law has been committed." Id. (quoting Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire, 637 A.2d 1047, 1049 (R.I. 1994)). "If legally competent evidence exists in support of the factual findings of the Appellate Division, those findings are binding upon this [C]ourt, and the decree of the Appellate Division must be sustained." Impulse Packaging, Inc. v. Sicajan, 869 A.2d 593, 598 (R.I. 2005) (quoting Wehr, Inc. v. Truex, 700 A.2d 1085, 1087-88 (R.I. 1997)). "This Court

---

[6] We reject Liberty's argument that Beacon violated G.L. 1956 § 28-29-2(4) by defining "Rhode Island Employee" more narrowly than defined in the act because we find Beacon's definition of "Rhode Island Employee" neither relevant nor in contravention of the act. The phrase and accompanying definition of "Rhode Island Employee" appear within the "Temporary Exposure in Other States" provision in the Beacon policy, which addresses its payment of workers' compensation benefits awarded in another state. This provision is inapplicable here because benefits were awarded to Furia in Rhode Island, Ajax is not requesting that Beacon pay benefits awarded out-of-state, and further, this provision applies to "Rhode Island Employee[s]" temporarily working in another state, not Furia who primarily worked in Massachusetts. The definition does not limit jurisdiction under the act; rather, it limits Beacon's payment of out-of-state benefits.

will, however, conduct a <u>de</u> <u>novo</u> review if a question of law or a mixed question of fact and law is in issue." <u>Id.</u>

**III**

**Discussion**

The parties raise contract-interpretation and statutory-construction issues. The first concerns the Appellate Division's interpretation of Liberty's "Massachusetts Limited Other States Insurance Endorsement." Specifically, Ajax and Beacon assert that the Appellate Division erred in concluding that Furia was not a "Massachusetts employee" entitled to recover under the endorsement. Second, Ajax and Beacon challenge the Appellate Division's interpretation of § 28-36-5, namely, the meaning of the phrase "entire liability of the employer." Ajax and Beacon contend that the phrase does not render Beacon responsible for paying the entire liability. We address each of these issues in turn.

**A**

**"Massachusetts employee"**

Both Ajax and Beacon challenge the Appellate Division's interpretation of the term "Massachusetts employee" as used in Liberty's "Massachusetts Limited Other States Insurance Endorsement." Ajax deems the term unambiguous and argues that the only reasonable interpretation of "Massachusetts employee" is an employee who works primarily in Massachusetts. It maintains that the Appellate Division's conclusion that an employee who worked predominantly in Massachusetts, such as Furia, did not qualify as a "Massachusetts employee" was "unreasonable and contrary to the plain and ordinary meaning of that term." Alternatively, Ajax contends that the Appellate Division's resort to the WCRIB bulletin to define

- 11 -

"Massachusetts employee" renders the term ambiguous causing it to be construed against Liberty.

Beacon also asserts that the term is unambiguous because "the ordinary reader and purchaser" of the Liberty policy would have understood the "Massachusetts Limited Other States Insurance Endorsement" to require Liberty to pay benefits awarded in another state. Further, Beacon avers that the Appellate Division erred in looking to the WCRIB bulletin to define the term because the endorsement was not attached to the Liberty policy or otherwise sent to Ajax.

Because "the material facts of this case are undisputed, and the issue before us is one of contract interpretation[,]" we conduct a de novo review. New London County Mutual Insurance Co. v. Fontaine, 45 A.3d 551, 557 (R.I. 2012). "An insurance policy is contractual in nature[.]" Medical Malpractice Joint Underwriting Association of Rhode Island v. Charlesgate Nursing Center, L.P., 115 A.3d 998, 1002 (R.I. 2015) (Medical Malpractice) (quoting Derderian v. Essex Insurance Co., 44 A.3d 122, 127 (R.I. 2012)). Therefore, "when interpreting the disputed terms of an insurance policy, we must do so in accordance with the rules of construction that govern contracts." Id.

"[W]e shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." Van Hoesen v. Lloyd's of London, 134 A.3d 178, 181 (R.I. 2016) (quoting Allstate Insurance Co. v. Ahlquist, 59 A.3d 95, 98 (R.I. 2013)). To determine whether a policy's terms are ambiguous, "we give words their plain, ordinary, and usual meaning." Medical Malpractice, 115 A.3d at 1002 (quoting Derderian, 44 A.3d at 128). "[W]e read the policy in its entirety, giving words their plain meaning; importantly, we refrain from 'engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present.'" Peerless Insurance Co. v. Luppe, 118 A.3d 500, 506 (R.I. 2015) (quoting

Mallane v. Holyoke Mutual Insurance Co. in Salem, 658 A.2d 18, 20 (R.I. 1995)). "If an ambiguity is found, it is strictly construed in favor of the insured." Koziol v. Peerless Insurance Co., 41 A.3d 647, 649-50 (R.I. 2012).

Giving the term "Massachusetts employee" its plain, ordinary, and usual meaning, it is clear that the term is unambiguous. An ordinary reader and purchaser would have believed the term to mean an employee who works primarily in Massachusetts. No ordinary reader would have read "Massachusetts employee" to mean "individuals who are hired in Massachusetts to work primarily in Massachusetts, but who are temporarily working in another state in furtherance of their Massachusetts employers."

Under the term's plain meaning, an employee who works primarily in Massachusetts, such as Furia, undoubtedly qualifies as a "Massachusetts employee." Furia estimated that he worked in Massachusetts about 70 percent of the time. Additionally, Morel testified that Ajax predominantly worked in Massachusetts, Ajax withheld Massachusetts income taxes for every employee that worked in Massachusetts, and Ajax paid Massachusetts unemployment taxes. Moreover, the premium that Liberty received from Ajax was based on Ajax employees' wages, including Furia's, for jobs worked in Massachusetts.

We further hold that the Appellate Division erred by looking to the WCRIB bulletin to define "Massachusetts employee." "[B]efore the [Appellate Division] may look to extrinsic evidence[,] an ambiguity must be found in the terms of the contract." Merrimack Mutual Fire Insurance Co. v. Dufault, 958 A.2d 620, 624-25 (R.I. 2008). The WCRIB bulletin constituted extrinsic evidence because it was not attached to the insurance policy. See Children's Friend & Service v. St. Paul Fire & Marine Insurance Co., 893 A.2d 222, 232 (R.I. 2006) ("It is the general rule that an endorsement or rider attached to an insurance policy becomes and forms a

- 13 -

part of the contract * * * .") (quoting National Union Fire Insurance Co. of Pittsburgh v. Lumbermens Mutual Casualty Co., 385 F.3d 47, 55 (1st Cir. 2004)). In its decision, the Appellate Division acknowledged that the Liberty policy issued to Ajax did not include the relied-upon definition of "Massachusetts employee."

Here, because the Appellate Division did not expressly find ambiguity in the term, reliance on extrinsic evidence for its definition was error. Even if the Appellate Division declared "Massachusetts employee" ambiguous, "[w]hen a policy term is found to be ambiguous, * * * 'the policy will be strictly construed in favor of the insured and against the insurer.'" Medical Malpractice, 115 A.3d at 1003 (quoting Derderian, 44 A.3d at 127). The Appellate Division failed to construe "Massachusetts employee" in favor of Ajax, the insured, and instead, adopted the WCRIB's definition that limited Liberty's liability to pay benefits under its "Massachusetts Limited Other States Insurance Endorsement."

Accordingly, we deem the term "Massachusetts employee" unambiguous; and, under its plain meaning, Furia, who worked primarily in Massachusetts, is a "Massachusetts employee" under Liberty's policy. As Liberty's policy states that it will pay the benefits required by the workers' compensation law of any state other than Massachusetts, if the claim involves work performed by a Massachusetts employee, Liberty must pay Furia's benefits. Having so found, we must still determine whether Beacon could also be liable for Furia's claim under § 28-36-5.

### B

### "[E]ntire liability of the employer"

Ajax and Beacon also challenge the Appellate Division's interpretation of "entire liability of the employer" as used within § 28-36-5, which states, in pertinent part, "[e]very policy shall

- 14 -

cover the <u>entire</u> <u>liability</u> <u>of</u> <u>the</u> <u>employer</u> under chapters 29 -- 38 of this title * * * ." (Emphasis added).

Ajax argues that the Appellate Division erroneously broadened the scope of § 28-36-5 and failed to further the statute's legislative intent of ensuring that an employer covers all of its employees. It asserts that nothing in the statute states that this must be accomplished through one policy. Further, Ajax contends that the interpretation "leads to absurd, unintended and unreasonable results." It maintains that the Appellate Division's interpretation would make it necessary for Ajax and similar employers "to obtain expensive, duplicative coverage in multiple states based solely on the employee's choice of forum."

Similarly, Beacon argues that the phrase "entire liability of the employer" is unclear and ambiguous. It therefore contends that the Appellate Division's interpretation flouted the statute's legislative intent because it would prevent employers from obtaining workers' compensation coverage through different insurers, so long as all employees were covered under the act, and it would limit competition among insurers. Rather, Beacon maintains that a "more logical" interpretation of the phrase is that a policy cannot exclude benefits that the act provides, but there is no requirement that all coverage must be from one policy. Beacon concludes by asserting that Furia's decision to file his claim in Rhode Island should not determine Liberty's liability as "Ajax bargained for coverage with Liberty, paid for that coverage, [and] had an expectation of coverage for claims such as Mr. Furia's * * * ."

We review this statutory-construction issue <u>de</u> <u>novo</u>. <u>Conley v. Fontaine</u>, 138 A.3d 756, 760 (R.I. 2016). To this end, "[i]f its language is 'clear and unambiguous,' this Court must apply its 'plain and ordinary meaning' and abstain from judicial construction." <u>Prew v. Employee Retirement System of Providence</u>, 139 A.3d 556, 561 (R.I. 2016) (quoting <u>Pierce v. Providence</u>

Retirement Board, 15 A.3d 957, 963 (R.I. 2011)). If a statute's language is ambiguous, however, "we must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." 5750 Post Road Medical Offices, LLC v. East Greenwich Fire District, 138 A.3d 163, 167 (R.I. 2016) (quoting In re Tetreault, 11 A.3d 635, 639 (R.I. 2011)).

We deem the phrase "entire liability of the employer" unclear and ambiguous, and accordingly, we must analyze the act to glean its legislative intent and purpose. "The primary object of [workers'] compensation is to provide economic assistance to an employee who is injured and thereby suffers a loss of earnings" and "to impose upon the employer the burden of taking care of the casualties occurring in his employment, thus preventing the injured employee from becoming a public charge." Geigy Chemical Corp. v. Zuckerman, 106 R.I. 534, 541, 261 A.2d 844, 848 (1970). With that purpose in mind, the Legislature enacted § 28-36-5, which provides that "[e]very policy shall cover the entire liability of the employer * * * ."

Because "[t]his Court always will strive to adopt a construction of a statute that avoids an absurd or unjust result," we decline to adopt the Appellate Division's statutory interpretation. Berman v. Sitrin, 991 A.2d 1038, 1049 (R.I. 2010). Instead, we conclude that the legislative intent of "entire liability of the employer" was to ensure that employers obtain complete coverage for all of their employees. It did not, however, bar them from doing so with more than one policy or insurer. Here, Ajax, through the same insurance agent, purchased policies from Beacon and Liberty to cover the act's mandate. By its interpretation, the Appellate Division extended the Beacon policy, without the corresponding premiums to cover the added risks, and deflated the Liberty policy, despite its already significant premiums.

Although we have not previously interpreted the phrase "entire liability of the employer" and interpretations from other jurisdictions are scant, we take guidance from an earlier opinion of the Connecticut Supreme Court. In <u>Miller Bros. Const. Co. v. Maryland Casualty Co.</u>, 155 A. 709, 713 (Conn. 1931), the Connecticut Supreme Court concluded that "the entire liability of the employer" did "not require coverage for the entire liability of an employer, anywhere and at any time; but such liability of the employer as the insurance company undertakes to assume must be assumed in its entirety." Rather, it held that "[f]ull coverage of the entire liability of an employer at a given place or places, on specified work, fully meets the intent of the statute in this respect." <u>Id.</u> The court noted that otherwise "it would be necessary for an employer in all cases to obtain a single policy covering all his liability in every place, and would prevent his taking out several policies in different companies * * * ." <u>Id.</u> While insurance policies cannot exclude benefits provided under the act, § 28-36-5 does not prevent an employer from having more than one insurer for all of its workers, especially if doing so will result in savings to the employer. As Beacon points out, this "would be akin to a requirement that a property owner insure their home, car, and other personal belongings with the same insurer."

We further disagree with the Appellate Division's interpretation that based an insurer's responsibility to pay benefits on the place where the claim was filed, rather than the policy's language, leaving liability to something as arbitrary as the location of the employee's filing. Indeed, other states have declined to adopt interpretations that would cause liability to hinge on the location of the filing. <u>See</u> <u>Miller Bros. Const. Co.</u>, 155 A. at 713; <u>American Mutual Insurance Co. v. Duvall</u>, 372 A.2d 263, 266 (N.H. 1977); <u>Weinberg v. State Workmen's Ins. Fund</u>, 81 A.2d 906, 909 (Pa. 1951); <u>Lenny Szarek, Inc. v. Maryland Casualty Co.</u>, 829 N.E.2d

871, 875 (Ill. App. Ct. 2005).[7] An employee's choice to file a workers' compensation claim in a particular state is merely "a happenstance" that is immaterial to an insurer's liability under its policy. American Mutual Insurance Co., 372 A.2d at 266.

Having examined the legislative intent and purpose of the act, we hold that the phrase "entire liability of the employer" was meant to ensure that an employer obtained coverage for all of its employees, not that it had to do so with a single policy. Beacon is not responsible under § 28-36-5 to pay the benefits on Furia's claim solely because he filed it in Rhode Island. Accordingly, the Appellate Division erred in its interpretations of "Massachusetts employee" and "entire liability of the employer." As such, Liberty is liable under the "Massachusetts Limited Other States Insurance Endorsement" for the payment of benefits awarded to Furia in Rhode Island, and Beacon is not liable under § 28-36-5 to pay any benefits on the claim. Liberty shall reimburse Beacon for any payments made by Beacon pursuant to the lower courts' rulings in this case.

## IV

## Conclusion

For the reasons outlined in this opinion, the petitions for certiorari are granted, and the decree of the Appellate Division is quashed. The record in this case is remanded to the Appellate Division with our decision endorsed thereon.

---

[7] In Lenny Szarek, Inc. v. Maryland Casualty Co., 829 N.E.2d 871, 872-73 (Ill. App. Ct. 2005), a factually analogous case, an Illinois employer had two insurance policies: one for its work in Wisconsin and one for its work in Illinois. A Szarek employee was injured while working in Wisconsin and filed his workers' compensation claim in Illinois, the state of his residence. Id. at 873. The Wisconsin insurer denied liability, arguing that its policy only covered claims brought in Wisconsin. Id. The Appellate Court of Illinois rejected this view, to "avoid[] having an employer's coverage rest totally on the whim of the employee in his choice of the forum state in which to process the claim." Id. at 877.

STATE OF RHODE ISLAND AND ⚖ PROVIDENCE PLANTATIONS

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Ajax Construction Company, Inc. v. Liberty Mutual Insurance Company et al. |
| **Case Number** | No. 2014-55-M.P.<br>No. 2014-56-M.P.<br>No. 2014-58-M.P.<br>(04-7659) |
| **Date Opinion Filed** | February 28, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Workers' Compensation Court |
| **Judicial Officer From Lower Court** | Acting Chief Judge Debra Olsson<br>Associate Judge Janette Bertness<br>Associate Judge George Salem, Jr. |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Susan Pepin Fay, Esq.<br>Ryan C. Hurley, Esq.<br>James T. Hornstein, Esq.<br><br>For Defendants:<br><br>Jeffrey M. Liptrot, Esq.<br>Daniel J. Archetto, Esq.<br>Conrad M. Cutcliffe, Esq. |